In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3084

MIGUEL PEREZ,

*Plaintiff-Appellant,*

*v.*

JAMES FENOGLIO, ET AL.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:11-cv-00819—**G. Patrick Murphy,** *Judge.*

ARGUED OCTOBER 30, 2014 — DECIDED JULY 7, 2015

Before WILLIAMS, TINDER, and HAMILTON, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Miguel Perez, an inmate at Lawrence Correctional Center, brought an action under 42 U.S.C. § 1983 against various prison officials alleging cruel and unusual punishment in violation of the Eighth Amendment. According to his pro se complaint, prison officials were deliberately indifferent to his severe hand injury, delaying his receipt of medically necessary surgery for ten months. This delay caused Perez needless pain and suffering and left him

with permanent loss of hand functioning. The district court, after denying Perez's request for pro bono counsel, screened his complaint under 28 U.S.C. § 1915A, and dismissed it sua sponte, with prejudice, for failure to state a claim. This appeal followed.

We find that the district court's dismissal of Perez's claims was premature. Liberally construed, Perez's pro se complaint states valid Eighth Amendment claims against members of the prison's medical staff and various grievance officials. It also states, by way of an attached grievance, a valid First Amendment retaliation claim. Therefore, we reverse the district court's dismissal and remand for proceedings consistent with this opinion.

## I. BACKGROUND

We accept the facts alleged in Perez's complaint as true and review them in the light most favorable to him. *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014). On May 16, 2010, while an inmate at Lawrence Correctional Center in Sumner, Illinois, Miguel Perez was injured during a prison basketball game. He suffered a torn ligament in his right hand, dislocation of his thumb, tissue damage, and a "gaping wound" between his thumb and right index finger. No physician was on duty at the prison, so Perez was seen by a nurse, C. Brooks,[1] who wrapped his hand with gauze. She stated that she could not provide pain medicine to Perez or stitch his wound because only physicians were authorized to do so.

---

[1] The first names of several of the named defendants, including Nurse Brooks, are not yet part of the record.

The following day, Perez returned to the prison infirmary and was seen by a physician, Dr. James Fenoglio, who prescribed Perez antibiotics, but did not stitch his wound. Recognizing the severity of the injury, Dr. Fenoglio stated that Perez "would need to go to the outside hospital to see a hand surgeon" and recommended a specialist at the Carle Clinic in Champaign, Illinois. Before Perez could see the specialist, a referral request had to be approved by Phil Martin, the prison's Health Care Administrator. Martin waited several days before issuing his approval, during which time Perez languished in pain and attempted to manage an open, bleeding wound.

Four days after sustaining his hand injury, on May 20, 2010, Perez filed a grievance with the prison. In it, he explained that he had an open, bleeding wound and was experiencing extreme levels of pain and discomfort. He also claimed he was being "punished in retribution for a prior grievance" he filed on January 2, 2010, which complained of a delay in receiving his prescription depression medication. Perez's May 20th grievance was rejected by Counselor C. Vaughn, whose decision was affirmed by Grievance Officer Pamela Moran.

On May 21, 2010, Perez was taken to the Carle Clinic, where he was seen by a physician's assistant, Julie Young. Young diagnosed Perez with "a large soft tissue tear" and "[p]robable right thumb MCP [metacarpophalageal] joint subluxation/dislocation with [a] possible radial collateral ligament tear." Young determined that Perez had "2 [centimeters] soft tissue laceration … extend[ing] from the webspace proximally across the base of the thumb," and a "wound [that] itself is quite deep … gaping open several

[millimeters] and … more when he abducts his thumb." Young could not suture the wound, however, because it was already five days old. She determined that the hand would have to be treated through "surgical revision" or "secondary intention," the process by which a wound heals outward from its base because the skin edges cannot be brought together. Young ordered that Perez receive twice-daily dressing changes and cleanings with hydrogen peroxide. She also suggested "possible splinting or casting for the thumb injury" and scheduled Perez for a "wound check" for early the following week.

Prison officials did not follow Young's care instructions, nor did they take Perez to his follow-up appointment. As a result, Perez claims to have filed another grievance on June 17, 2010 requesting that he be returned to the Carle Clinic. Around this time, he also appealed the denial of his May 20th grievance. Brian Fairchild, an officer with the Administrative Review Board, and Gladyse Taylor, the Acting Director of the Illinois Department of Corrections, rejected this appeal, stating the issue was appropriately addressed by the institutional administration.

On December 6, 2010, seven months after his initial visit, Perez was brought back to the Carle Clinic, where he was seen by Dr. Cliff Johnson. Dr. Johnson determined that Perez had an "obvious subluxation of the right thumb MCP joint," "hyperextension of the MCP joint," and "laxity of the radial collateral ligament." He also took "X-rays … of [his] right thumb [that] show[ed] some early wear and tear changes as well as ulnar deviation of the thumb MCP joint." Dr. Johnson presented Perez with two treatment options. He could undergo surgery (a right thumb MCP fusion procedure) or

he could "live with it" and have a Thermoplast spica splint custom made for his hand. However, he was not sure if Perez would be able to wear such a splint in prison. Dr. Johnson further stated that if Perez wished to try the splint, the prison should "schedule him back in therapy [at the clinic] for that appointment." He explained these options to Perez and sent his recommendations to Dr. Fenoglio.

Following this visit, Perez was seen at the prison by Dr. Fenoglio, who elected to wrap Perez's hand in an Ace bandage. While wrapping his hand in the bandage, he told Perez, "[t]hat's [your] thumb-splica splinter."[2]

On January 10, 2011, Perez filed another grievance. This time, he detailed the seven-month delay between his visits to the Carle Clinic, described continued pain and suffering, complained about the indifference of the prison's medical staff, and requested that he be provided with either a custom-made spica splint or surgery.

On February 15, 2011, Perez was brought back to the Carle Clinic, where Dr. Johnson informed him and prison officials that "MCP joint fusion" was "the only surgical solution" remaining for Perez. The following month, Perez received the surgery. However, as a consequence of the ten-month delay, Perez claims to have sustained irreparable damage to his hand, resulting in "decreased usage."

---

[2] A "spica splint" is a splint that is custom-fitted to the thumb area of the hand to immobilize it while permitting continued use of the other fingers of the hand. Throughout the complaint, Perez refers to this as a "splica" splint, including when he recounts statements allegedly made by medical personnel.

Following the surgery, on April 27, 2011, Perez submitted a "resident request" to Warden Lee Ryker, asking for "assist[ance] in obtaining a resolution to [his] grievance"; he received no response. He also sent a letter to the Administrative Review Board requesting his grievance be processed. His appeal was not answered.

On September 8, 2011, Perez filed a pro se complaint under 42 U.S.C. § 1983 for damages and injunctive relief. He also requested that the district court recruit counsel to represent him pro bono under 28 U.S.C. § 1915(e)(1). The district court twice denied Perez's request for counsel. It then screened his complaint under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, and dismissed it sua sponte, with prejudice, for failure to state a claim. So, Perez filed this appeal.[3]

## II. ANALYSIS

On appeal, Perez makes four claims: (1) the district court erred in dismissing his case for failure to state an Eighth Amendment claim; (2) the district court failed to address the First Amendment claim of retaliation stated in his complaint; (3) the district court abused its discretion by dismissing his complaint with prejudice; and (4) the district court abused its discretion by refusing to grant his request for pro bono counsel. We address each in turn.

---

[3] This court, after reviewing Perez's pro se appeal, appointed appellate counsel.

### A.    Perez's Complaint States a Valid Eighth Amendment Claim

Our review of the district court's dismissal of Perez's complaint under § 1915A for failure to state an Eighth Amendment claim is *de novo*, taking the allegations in the complaint as true and drawing all reasonable inferences in Perez's favor. *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012) (per curiam). Because Perez's complaint is *pro se*, we construe it "liberally," holding it to a "less stringent standard than formal pleadings drafted by lawyers." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition. *Arnett*, 658 F.3d at 750. Because there is no dispute that Perez's alleged injury was sufficiently serious, the only issue in this appeal is whether the complaint alleges deliberate indifference. Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (plaintiff must show that officials are "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference."). The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose,

and is thus properly equated with reckless disregard. *Id*. at 836.

The district court dismissed Perez's complaint on the ground that Perez had undermined any contention of deliberate indifference by "conceding" to having received "immediate" and "continuing" medical attention from prison staff for his injury. We disagree with this reasoning. If all the Eighth Amendment required was that prison officials provide some "immediate and ongoing attention," they could shield themselves from liability (and save considerable resources) by shuttling sick or injured inmates to perfunctory medical appointments wherein no meaningful treatment is dispensed. Needless to say, the responsibilities imposed by the Constitution are not so easily avoided.

Prison officials must provide inmates with medical care that is adequate in light of the severity of the condition and professional norms. *See, e.g.*, *Farmer*, 511 U.S. at 832; *Arnett*, 658 F.3d at 751. The "receipt of some medical care does not automatically defeat a claim of deliberate indifference." *Edwards*, 478 F.3d at 831; *see also Arnett*, 658 F.3d at 751 (prisoner need not show that his or her medical needs were "literally ignored"). Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers "blatantly inappropriate" medical treatment, *Edwards*, 478 F.3d at 831, acts in a manner contrary to the recommendation of specialists, *Arnett*, 658 F.3d at 753, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Based on a review of the complaint and attached documents, we have no trouble finding that Perez states a valid

Eighth Amendment claim. Perez sets forth a plausible ac-
count of the facts showing the severity of his injury, how
much delay he experienced in obtaining meaningful treat-
ment, how often he asked various officials to intervene on
his behalf, and the consequences of their inaction. Our deci-
sion in *Edwards* is squarely on point. There, the plaintiff al-
leged that "he severely injured his finger while in prison and
failed to receive adequate, timely care for a nonmedical rea-
son … result[ing] in permanent disfigurement, loss of range
of motion, and the infliction of unnecessary pain." 478 F.3d
at 830. We held that these allegations were sufficient to "sat-
isfy federal pleading requirements and state a claim for de-
liberate indifference." *Id.* Perez's allegations, which are vir-
tually identical, are also sufficient. Because Perez's allega-
tions against the individual defendants are different, we ad-
dress them individually below.

### 1. The Prison Physician—Dr. Fenoglio

Perez's complaint alleges that his prison physician, Dr.
James Fenoglio, failed to provide him with adequate, timely
care and ignored the treatment recommendations of special-
ists at the Carle Clinic.

"Prison physicians will be liable under the Eighth
Amendment if they intentionally disregard a known, objec-
tively serious medical condition that poses an excessive risk
to an inmate's health." *Gonzales v. Feinerman*, 663 F.3d 311,
313 (7th Cir. 2011). A delay in treatment may show deliber-
ate indifference if it exacerbated the inmate's injury or un-
necessarily prolonged his pain. *McGowan*, 612 F.3d at 640;
*Edwards*, 478 F.3d at 831. Whether the length of delay is tol-
erable depends upon the seriousness of the condition and
the ease of providing treatment. *McGowan*, 612 F.3d at 640.

In some cases, even brief, unexplained delays in treatment may constitute deliberate indifference. *See Edwards*, 478 F.3d at 831-32 (two-day delay in treatment for open dislocated finger for no medical reason stated a claim against prison doctor for deliberate indifference); *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating" presented question for jury).

Perez's complaint alleges with specificity a number of troubling delays in his treatment. After sustaining a gaping wound and open dislocation, he was forced to wait 24 hours before seeing a physician with authority to prescribe medication or suture wounds. After being seen by Dr. Fenoglio, who determined that the wound was so serious it required the care of a specialist, Perez had to wait four days (and had to file a grievance) before being sent to the Carle Clinic. By the time he arrived, it was too late for the specialist to suture the wound. After visiting the Carle Clinic, Perez waited seven months (and had to file another grievance) before he was returned to the clinic for follow-up care. All told, while under Dr. Fenoglio's care, Perez experienced a ten-month delay from the time of his injury until the time he received meaningful treatment in the form of surgery.

Such unexplained delays could support a deliberate indifference claim if Dr. Fenoglio was aware of the severity of Perez's condition. *See McGowan*, 612 F.3d at 640. Here, Perez has alleged that Dr. Fenoglio knew as early as May 17, 2010, that Perez had a severe hand injury, which, in Dr. Fenoglio's own estimation, required expert attention to treat. Dr. Fenoglio saw Perez on multiple occasions thereafter, during which Perez complained of ongoing symptoms (pain and

discomfort, bleeding, swelling, and loss of functioning), which could support a finding that the delays in Perez's treatment were unacceptable.

Perez also alleges that Dr. Fenoglio's failure to follow the recommendations of specialists at the Carle Clinic constituted deliberate indifference. According to Perez, doctors at the clinic recommended two courses of treatment: undergo surgery or get custom fitted for a Thermoplast spica splint and attempt to live with the injury for a time. Dr. Fenoglio allegedly ignored the recommendations, electing instead to wrap Perez's wound in an Ace bandage.

Allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference. *See Arnett*, 658 F.3d at 753 (allegation that medical official refused to provide inmate with prescribed anti-inflammatory medication or substitute, despite his repeated complaints and worsening pain, stated claim for deliberate indifference); *Gil v. Reed*, 381 F.3d 649, 664 (7th Cir. 2004) (allegation that prison doctor prescribed medication to inmate that specialist warned against gave rise to genuine issue of material fact precluding summary judgment); *Jones v. Simek*, 193 F.3d 485, 490–91 (7th Cir. 1999) (evidence prison doctor refused to follow specialist's orders precluded summary judgment); *see also Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards").

Perez alleges that Dr. Fenoglio was aware of the special-ists' recommendations, but refused to follow them despite Perez's severe injury and his repeated complaints of pain. By quoting Dr. Fenoglio's sarcastic statement that the Ace bandage would be his "thumb-splica splinter," Perez also suggests that Dr. Fenoglio's decision to ignore the recom-mendations was not based on any reasoned judgment. *See Rodriguez*, 577 F.3d at 832 (allowing claim to advance that "alleged implicitly that [inmate's] treatment … was not based on a legitimate medical judgment"); *see also Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) (prison official's "sarcastic responses" to prisoner's complaint "help raise a dispute about … defendants' knowledge of the condition, and [his] refusal to take steps to prevent it"). These allega-tions could sustain a claim of deliberate indifference against Dr. Fenoglio.

We recognize that a more complete examination of the facts may show that Perez's condition did not necessitate surgery or a splint, that Dr. Fenoglio was not aware of the need for more urgent care, or that someone else was respon-sible for the alleged delays. It might also reveal that Dr. Fen-oglio's treatment plan fell within the specialists' recommen-dations or was based on his own legitimate medical judg-ment. But those are details to be explored during discovery. At this stage, Perez has stated a claim for such serious delays in the provision of adequate treatment that the Eighth Amendment may have been violated. *See McGowan*, 612 F.3d at 640.

### 2. The Prison Nurse—Brooks

Perez alleges that Nurse Brooks's failure to suture Perez's wound or provide pain medication on the day of his injury,

and thereafter to ensure he received constitutionally adequate care, constituted deliberate indifference. The State[4] contends that Perez's claim against Nurse Brooks must be dismissed because Brooks lacked the authority to provide additional care to Perez and because she acted appropriately by making an appointment for Perez to see Dr. Fenoglio the day after his injury.

While nurses may generally defer to instructions given by physicians, they have an independent duty to ensure that inmates receive constitutionally adequate care. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010). Nurses, like physicians, may thus be held liable for deliberate indifference where they knowingly disregard a risk to an inmate's heath. *See id.* "[A] nurse confronted with an 'inappropriate or questionable practice' should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action,' whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority." *Id.*; *see also Rice ex rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 683 (7th Cir. 2012) ("[A] nurse may not unthinkingly defer to physicians and ignore obvious risks to an inmate's health….").

---

[4] Although some of the named defendants were officials or employees of the State of Illinois, the district court dismissed Perez's complaint for failure to state a claim under 28 U.S.C. § 1915A at the screening stage before summonses were served. Thus, these defendants never appeared in the case and were not required to file response briefs in this appeal. We invited Attorney General of the State of Illinois, Lisa Madigan ("the State"), to file a response brief as an interested party, and she accepted. The Attorney General, however, is not acting as counsel for defendants.

*Berry* illustrates these principles. There, an inmate complained of a toothache, but was not taken to a dentist for two months and ultimately required a root canal. 604 F.3d at 439. The inmate brought an action under § 1983 alleging deliberate indifference on the part of the prison dentist and the nurse. The district court granted summary judgment in favor of the defendants, but we reversed, finding that there were genuine issues of material fact as to whether the nurse had acted with deliberate indifference by deferring to the prison doctor's determination that the inmate could wait two months to see a dentist despite his persistent complaints. *Id*. at 443. We also explicitly rejected the notion—put forward by the State in this case—that nurses cannot, as a matter of law, be held liable for Eighth Amendment violations where they allegedly lacked authority to provide particular forms of medical care to inmates. *Id*.

We find that Perez's complaint states a claim for deliberate indifference against Nurse Brooks by alleging she had knowledge of his severe injury, yet failed to provide adequate medical treatment to Perez herself (e.g., by suturing his wound) or to ensure that others did (e.g., by contacting supervisory personnel to voice any concerns about the treatment being provided to him).

Again, we note that discovery may yield more information regarding whether Nurse Brooks had authority to stitch wounds or dispense pain medication, and whether such actions were medically necessary. Discovery may also show that Brooks did in fact take steps to ensure Perez was receiving constitutionally adequate care. However, these are questions of fact that cannot be resolved at this stage in the litigation.

### 3. Wexford Health Sources, Inc.

The complaint also names as a defendant Wexford Health Sources, Inc., the private corporation that serves as the prison's healthcare provider. In this circuit, a private corporation cannot be held liable under § 1983 unless it maintained an unconstitutional policy or custom. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).[5] Perez's complaint alleges that Nurse Brooks "told [him] that there was no doctor there therefore she couldn't stitch [his] wound and just wrapped [his] hand." The question before us is thus whether this statement is sufficient to identify an unconstitutional policy or practice maintained by Wexford.

In light of our duty to construe Perez's *pro se* complaint liberally, *Arnett*, 658 F.3d at 751, and to draw all reasonable inferences in his favor, *Thulin*, 771 F.3d at 997, we find that Perez sufficiently alleges that Wexford maintained a policy or practice that prevented nurses from stitching wounds or prescribing medication without a "doctor there." We further infer from his complaint the allegation that Wexford maintained a policy or practice of not having a full-time doctor stationed at the prison at all times (or on call to suture open wounds as necessary). Because these alleged policies are ca-

---

[5] We recently examined the legal soundness of this rule in *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (questioning whether the *Monell* principle, which shields municipalities from respondeat superior liability in actions brought under § 1983, is properly extended to private corporations), *cert. denied*, 135 S. Ct. 1024 (2015). However, the parties do not here challenge it.

pable of causing delays in treatment—which could result in a constitutional deprivation, *McGowan*, 612 F.3d at 640—the claim against Wexford should have been allowed to proceed.

### 4. Administrator Martin

Perez accuses Administrator Martin, the individual responsible for approving requests for inmates to be seen by outside doctors, of deliberate indifference for refusing to grant Perez's referral request without explanation for four days.

We find that Perez's complaint states a claim for deliberate indifference against Administrator Martin. *See McGowan*, 612 F.3d at 641 (plaintiff stated plausible deliberate indifference claim against health administrator who "stalled in authorizing a referral to an outside surgeon"). As noted above, a delay in treatment may constitute deliberate difference if it exacerbates the inmate's injury or unnecessarily prolonged his pain. *McGowan*, 612 F.3d at 640. "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Smith*, 666 F.3d at 1040. Here, Perez alleges that because Martin took four days to approve the request, the specialist was unable to suture the wound, causing him needless pain and suffering and worsening the injury. This suffices to state a claim against Martin.

### 5. The Grievance Defendants

Perez's complaint alleges deliberate indifference on the part of various non-medical prison officials ("the grievance defendants") who were made aware of Perez's predicament by way of his grievances and other correspondences. Perez asserts that Counselor Vaughn and Officer Moran reviewed

and denied each of Perez's grievances; that Warden Ryker received a "resident request" asking for "assist[ance] in obtaining a resolution to [Perez's] grievance" but failed to respond; and that Director Taylor (of the Illinois Department of Corrections) and Officer Fairchild (of the Administrative Review Board) denied his appeals and never responded to his inquiry letter, which requested that his grievance be duly processed. The State contends that as a matter of law the grievance defendants cannot be held personally liable for any inadequate medical care Perez may have received because other prison officials, *i.e.*, the medical defendants, would have been directly responsible for his medical care.

It is well established that "[f]or constitutional violations under § 1983 … a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 13-1857, 2015 WL 3528782, at *5 (7th Cir. June 5, 2015). This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of respondeat superior and must instead allege that the defendant, through his or her own conduct, has violated the Constitution. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The factors necessary to establish a § 1983 violation against a prison official depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision. *See id.*

As pertains to this case, in order to establish a constitutional violation based upon conditions of confinement, a plaintiff must allege that each prison official named as a defendant has been deliberately indifferent to that plaintiff's objectively serious medical condition, *Arnett*, 658 F.3d at 750, with deliberate indifference occurring where an official realizes

that a substantial risk of serious harm to a prisoner exists, but disregards it, *Farmer*, 511 U.S. at 837. Applying *Farmer*, we have stated that deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or "turn[s] a blind eye" to it. *See Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). An inmate's correspondence to a prison administrator may thus establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation. *Vance*, 97 F.3d at 993 ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."). Indeed, once an official is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.*; *accord Arnett*, 658 F.3d at 756. In other words, prisoner requests for relief that fall on "deaf ears" may evidence deliberate indifference. *Dixon*, 114 F.3d at 645.

In this regard, *Gentry v. Duckworth* is instructive. There, an inmate claimed that his right of access to the courts was violated because he was denied scribe materials (e.g., paper, some means of writing, and access to notary services) by prison guards. 65 F.3d at 557. He sent many letters to the superintendent concerning his claims, which went unanswered. *Id.* at 561. Although the superintendent may not have been directly responsible for the constitutional deprivation, we concluded that the superintendent knew of the de-

nial of scribe materials because of the prisoner's "many letters" to him, and that the superintendent had systematically ignored these requests for redress. We thus allowed the inmate's § 1983 action to survive summary judgment. *Id*.

We find that Perez's complaint alleges facts sufficient to form a basis for personal liability against the grievance officials for violations of the Eighth Amendment. The complaint alleges that the named defendants each obtained actual knowledge of Perez's objectively serious medical condition and inadequate medical care through Perez's coherent and highly detailed grievances and other correspondences. It also alleges that each of these officials failed to exercise his or her authority to intervene on Perez's behalf to rectify the situation, suggesting they either approved of or turned a blind eye to his allegedly unconstitutional treatment. *Gentry*, 65 F.3d at 561. Perez's claims against the grievance officials thus should have been allowed to proceed.

Again, we emphasize that the district court screened Perez's complaint before discovery, before submission of any evidence, and before the defendants were even served process. At this early stage of the litigation, we ask only whether Perez's complaint, liberally construed, *Arnett*, 658 F.3d at 751, and drawing all reasonable inferences in his favor, *Thulin*, 771 F.3d at 997, contains facts sufficient to state a plausible Eighth Amendment claim against the grievance defendants. We believe that it has. Of course, discovery will shed light on whether, as the State contends, the grievance defendants took "the needed action to investigate" Perez's grievances, *Vance*, 97 F.3d at 993, and "reasonably rel[ied] on the judgment of medical professionals." *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). However, these are ques-

tions of fact that simply cannot be resolved in the absence of a record.

Therefore, we reverse the dismissal of Perez's complaint with respect to all of the defendants.

**B.  Perez's Complaint States a Valid First Amendment Retaliation Claim**

Perez further argues that his complaint states a valid First Amendment claim of retaliation by way of an attached grievance. *See, e.g.*, *Arnett*, 658 F.3d at 746 (documents "attached to the complaint" are "part of the complaint"). That grievance, dated May 20, 2010, alleged the following:

> [T]he Health Care Professionals at this facility have been deliberately indifferent in providing needed care. It seems as though I am being punished in retribution for a prior grievance I had filed on January 2, 2010 in regards to their not providing me with my medication (Remeron 45mg) for 20 days in total disregard[] to doctor's order and prescription.

To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

With respect to the first of these elements, filing a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim. *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004). With respect to the sec-

ond, we have held that denial of medical treatment is a deprivation likely to dissuade a reasonable person from engaging in future First Amendment activity. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Here, Perez alleges that because he brought a grievance against prison officials for withholding of his prescribed depression medication, members of the prison's medical staff (including Dr. Fenoglio and Administrator Martin) denied him adequate care when he injured his hand. These allegations suffice to state a claim of retaliation, which the district court should have recognized and allowed Perez to pursue. *See* 28 U.S.C. § 1915A(b) (as part of the screening process "the court shall identify cognizable claims").

## C.    Dismissal With Prejudice Was Problematic

Because we reverse the district court's dismissal of the complaint, we need not address whether dismissal with prejudice was an abuse of discretion. We note, however, that the PLRA's screening requirement does not—either explicitly or implicitly—justify deviation from the usual procedural practice, *Jones v. Bock*, 549 U.S. 199, 214 (2007), which in this circuit is for courts to grant leave to amend or to dismiss without prejudice. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013) (collecting cases); *Powers v. Snyder*, 484 F.3d 929, 933 (7th Cir. 2007) (noting that in *pro se* prisoner cases, deficient pleadings should be dismissed "with leave to replead, rather than … with prejudice," which would "count as a 'strike,' limiting the plaintiff's right to bring subsequent suits"). Upon remand, Perez should be able to amend his pleading, should he so choose, "once as a matter of course" and thereafter as justice requires. *See* Fed. R. Civ. P. 15(a); *Crestview Vill. Apartments v. U.S. Dep't of*

*Hous. and Urban Dev.*, 383 F.3d 552, 557 (7th Cir. 2004) ("A motion to dismiss does not constitute a responsive pleading for purposes of Rule 15(a); thus, an order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right."); *Luevano*, 722 F.3d at 1023 ("District courts must allow [*in forma pauperis*] plaintiffs leave to amend at least once in all circumstances in which such leave would be granted to fee-paying plaintiffs under Rule 15(a).").

**D.	Perez's Request for Pro Bono Counsel**

Perez also argues the district court should have appointed counsel under 28 U.S.C. § 1915(e)(1). We review denials of requests for pro bono counsel for abuse of discretion, asking not whether the district court's decision was right, but whether it was "reasonable." *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (internal citations omitted).

In a civil case, the district court has discretion to recruit counsel to represent a litigant who is unable to afford one. 28 U.S.C. § 1915(e)(1). If a plaintiff makes a reasonable attempt to secure counsel, the court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Pruitt v. Mott*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). "There are no fixed requirements for determining a plaintiff's competence to litigate his own case." *Id.* Normally, the district court will "take into consideration the plaintiff's literacy, communication skills, educational level, and litigation experience" in relationship to the difficulties of the particular case. *Id*. But "in the end, the estimation as to whether a plaintiff can handle his own case must be a practical one, made in light of whatever relevant evidence is available on

the question." *Santiago v. Walls*, 599 F.3d 749, 762 (7th Cir. 2010) (internal citations and quotation marks omitted).

According to Perez, the district court did not adequately consider the difficulties posed by Perez's case and whether he was capable of litigating it. We disagree. The district court considered Perez's ability to litigate the case, noting that Perez (who had attended some college) lucidly set forth his allegations in his complaint. *Cf. Pruitt*, 503 F.3d at 649, 660-61 (finding abuse of discretion not to recruit counsel for an inmate with the "educational level of an early sixth grader"). The court also considered the complexity of his case, observing that it presented a relatively straightforward claim of deliberate indifference. *See Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) (rejecting inmate's argument "state-of-mind questions are categorically too difficult for pro se litigants"). Based on these considerations, we believe that the district court's denial of counsel was not unreasonable.

However, when deciding whether to recruit counsel, we encourage district courts in future cases to also consider the severity of the medical condition that the inmate has alleged. Where an inmate suffers a serious medical condition, it could be a red flag that prison officials may have failed to "take reasonable measures to guarantee the safety" of that inmate. *Farmer*, 511 U.S. at 832. Courts should be hesitant to dismiss a pro se complaint that states a serious medical condition (as Perez's did), yet fails perhaps to adequately allege deliberate indifference. As we have stated, whether there has been deliberate indifference on the part of a defendant is an issue that requires the "subtle appreciation of legal causation and of the duties imposed upon state prison officials by the Eighth Amendment." *Santiago*, 599 F.3d at 761. Even a pro se

litigant with a meritorious claim may fail to grasp these sub-tleties. Where an inmate alleges an objectively serious medi-cal condition, it may be better to appoint counsel—so that he or she can investigate and flesh out any claim that may ex-ist—than to dismiss a potentially meritorious claim and leave the prisoner in harm's way. In this regard, we are re-minded that prisoners have been "[s]tripped … of virtually every means of self-protection and foreclosed … [from] ac-cess to outside aid." *Farmer*, 511 U.S. at 833. District courts should remain cognizant of the common law adage that the "public … [is] required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." *Estelle*, 429 U.S. at 103-04.

Thus far, our analysis has focused on the considerations district courts should take into account when determining whether to recruit counsel at the initial pleadings stage. Those considerations change as a case progresses to discov-ery or trial. Taking depositions, conducting witness exami-nations, applying the rules of evidence, and making opening statements are beyond the ability of most pro se litigants to successfully carry out. *See Santiago*, 599 F.3d at 763-64; *Hen-derson*, 755 F.3d at 567. These tasks are even more challeng-ing in cases, like Perez's, where complex medical evidence (including expert testimony) is needed to assess the adequa-cy of the treatment received. *See e.g.*, *Greeno*, 414 F.3d at 658; *Santiago*, 599 F.3d at 761. District courts abuse their discre-tion where they fail to consider the complexities of ad-vanced-stage litigation activities and whether a litigant is capable of handling them. *Id*. Our cases would thus suggest that Perez should likely be granted pro bono counsel upon remand, once his case moves beyond the pleadings stage.

We emphasize, however, that counsel is critical at all stages of litigation. For this reason, courts should strive to implement programs to help locate pro bono assistance for indigent litigants. *See Henderson*, 755 F.3d at 563 (describing the Trial Bar Pro Bono Program instituted by the United States District Court for the Northern District of Illinois).

### III. CONCLUSION

The judgment of the district court is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.