In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3426

WILLIAM NALLY,

*Plaintiff-Appellant,*

*v.*

PARTHASARATHI GHOSH, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 13 C 7268 — **James F. Holderman**, *Judge.*

SUBMITTED MAY 26, 2015 — DECIDED AUGUST 24, 2015

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff is an inmate of Stateville prison in Illinois. His suit, filed in October 2013 under 42 U.S.C. § 1983, claims that the prison's medical staff was deliberately indifferent to the results of blood tests, administered over a period of more than five years, that indicated that he was either diabetic or prediabetic, or had progressed from prediabetic to diabetic during the period. There were eleven such tests in all. The first was in May 2005 and

showed a glucose count of 121 mg/dl (milligrams per deciliter). The second, in March 2007, showed a count of 118. The third, seven months later, showed a count of 114. But the count in the fourth test, in February of the following year, was 200, and subsequent tests yielded counts of 160, 136, 137, 162, 124, 141, and 222. Nally alleges that not until the last of these tests was conducted, late in 2010, did he learn that his blood glucose counts were dangerously high—that he was either diabetic or en route to becoming diabetic. The district court, however, dismissed the suit as time-barred.

We need to distinguish between two types of glucose blood test—fasting and random. See National Institute of Diabetes and Digestive and Kidney Diseases, "Diagnosis of Diabetes and Prediabetes," http://diabetes.niddk.nih.gov/ dm/pubs/diagnosis/ (visited August 5, 2015, as were the other websites cited in this opinion); National Institute of Health, "Comparing Diabetes Blood Tests," www.nid dk.nih.gov/health-information/health-topics/diagnostic-tests /comparing-tests-diabetes-prediabetes/Documents/Compari ng_Tests_for_DM_Chart_Only_508.pdf. The fasting test is administered at least 8 hours after a patient last ate, and for that test a glucose count of 100 to 125 means the patient is prediabetic and above 125 means that probably he's diabetic. In a random test (called "random" because it doesn't control for when the patient last ate), a score below 140 is normal, 140 to 199 is prediabetic, and 200 or higher means the patient has diabetes. *Id.*; National Institute of Diabetes and Digestive and Kidney Diseases, *supra*, "How Are Diabetes and Prediabetes Diagnosed?"; Cleveland Clinic, "Diabetes–Prevention: How is Pre-diabetes Diagnosed?" http://my.clevelandclinic. org/health/diseases_conditions/hic_Diabetes_Basics/hic_Und erstanding_Pre-Diabetes.

Unfortunately, we know only what type of test the plaintiff took in May 2005—it was a random test and his glucose count, 121, was normal. But the counts in five of the eleven tests were abnormal (141, 160, 162, 200, 222) even if all the tests were random tests; if the three tests in which his glucose counts were 124, 136, and 137 happen to have been fasting tests, then eight of the eleven test results were abnormal.

Yet apparently Nally was not told by anyone on the prison staff that he was either diabetic or prediabetic. Whichever he was he required treatment but appears not to have received any. A prediabetic often can avoid or delay becoming diabetic by cutting his sugar intake in accordance with advice from a nutritionist, by dieting, and by increased exercise or other physical activity. Most people don't know the sugar content of the foods they eat, or that, for example, eating a lot of fruit at one time can overload the pancreas with sugar even though fruit is usually and rightly believed to be healthful. A diagnosis of prediabetes is a wake-up call to take measures to head off becoming diabetic. For the medical staff of a prison to know that an inmate is diabetic or prediabetic, yet not tell him, let alone do nothing to treat his condition, is, therefore, to be reckless (a synonym for deliberately indifferent): that is, to know there is a grave risk, to be able to do something about the risk at no danger or great cost to oneself, yet to do nothing. Deliberate indifference to a prison inmate's serious health problems is of course actionable under 42 U.S.C. § 1983.

The district judge dismissed the suit as untimely on two grounds: because the defendant had known that he was diabetic or prediabetic in 2007, so that the two-year statute of limitations applicable to section 1983 suits brought in Illinois

had expired before he sued (which remember was not until 2013), and because in any event he had sued more than two years after learning in November 2010 that his glucose counts were abnormal. These grounds for dismissal were erroneous.

The defendant *now* knows that he was diabetic or prediabetic in 2007, but there is no indication that he learned this until November 2010. True, he alleges that in 2009 his eyesight began to deteriorate rapidly and he suffered excruciating leg cramps and numbness in his left foot—all of which are possible symptoms of diabetes. Michael Dansinger, "High Blood Sugar, Diabetes, and Your Body," *WebMD* (September 3, 2014), www.webmd.com/diabetes/how-sugar-affects-diabetes?page=2. Yet he may not have known that these were possible symptoms of diabetes—or indeed that he was diabetic or prediabetic, for the symptoms first occurred in 2009 and as far as appears it was not until November 2010 that he learned that the defendants' failure to take any action in response to his abnormal glucose blood counts was the cause, or a likely cause, of the symptoms. The statute of limitations in federal tort suits starts to run when a person knows that he is injured and knows what caused his injury. *United States v. Kubrick*, 444 U.S. 111, 117–25 (1979). "Knowledge of the injury *and its cause* should stimulate inquiry," as we said in *Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985) (emphasis added). Nally may not have known of the cause of his distressing symptoms until November 2010, and the two-year statute of limitations would have been tolled during the interval between that discovery and his filing suit because he was exhausting prison administrative remedies as a prelude to suing.

So the suit was timely, and therefore we reverse the judgment of dismissal and remand for proceedings to determine the merits of the plaintiff's suit.

We had occasion to note recently that "where an inmate alleges an objectively serious medical condition, it may be better to appoint counsel—so that he or she can investigate and flesh out any claim that may exist—than to dismiss a potentially meritorious claim and leave the prisoner in harm's way." *Perez v. Fenoglio*, 2015 WL 4092294, at \*11 (7th Cir. July 7, 2015). We placed particular emphasis on the case that has progressed from the pleading stage "to discovery or trial. Taking depositions, conducting witness examinations, applying the rules of evidence, and making opening statements are beyond the ability of most pro se litigants to successfully carry out. These tasks are even more challenging in cases … where complex medical evidence (including expert testimony) is needed to assess the adequacy of the treatment received. District courts abuse their discretion where they fail to consider the complexities of advanced-stage litigation activities and whether a litigant is capable of handling them." *Id*. at \*12 (citations omitted). These are considerations for the district court to bear in mind on remand.

REVERSED AND REMANDED

HAMILTON, *Circuit Judge*, concurring in the judgment. I agree with my colleagues that we must reverse the dismissal of this case, but my reasons have more to do with federal civil procedure than with the interpretation of glucose tests and the treatment of diabetes and its precursors. In my view, the critical fact here is that the district court dismissed Nally's pro se complaint at the screening stage for *in forma pauperis* complaints pursuant to 28 U.S.C. § 1915(e)(2). A proper liberal construction of that complaint allows room for Nally's claims to be timely, a conclusion that defendants can then test in district court after remand.

In the screening review, the district court ordered Nally to show cause why his complaint should not be dismissed as untimely. His response focused on tolling the statute of limitations while he was pursuing the prison's grievance procedure, as required by the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a); *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). Nally also pointed out that he had not discovered until April 2011 that the defendants had long known of his serious medical condition and had refused or failed to provide appropriate care. Critically, Nally alleged he had not understood until he saw his medical file in April 2011 the significance of the earlier test results. That much was also evident from his complaint, and at this stage of the case, we must accept his allegations as true.

In dismissing the case, the district court erred by construing the complaint too narrowly, apparently assuming that Nally knew well before April 2011 that the defendants had (allegedly) failed to provide appropriate care. Especially at the screening stage under § 1915(e)(2), it is important to construe the pro se complaint liberally. See, e.g., *Erickson v. Par-*

*dus*, 551 U.S. 89, 94 (2007) (summarily reversing dismissal); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). If Nally's claims did not accrue until April 2011 and if he then pursued the prison grievance procedure for several months, then his complaint would have been timely. It should not have been dismissed at the screening stage under § 1915(e)(2).

Anything we say today on the merits or timeliness should be taken with a grain of salt. We have before us only Nally's complaint and his response to the district court's order to show cause. Defendants have not even been served with process. They have not participated in this appeal. They will have every opportunity to be heard on all issues in the district court.