**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 13, 2017[*]
Decided May 5, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 16-2824

| | |
|---|---|
| STEVEN D. STEWART, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 14-cv-665-jdp |
| EDWARD F. WALL, *et al.,* *Defendants-Appellees.* | James D. Peterson, *Chief Judge.* |

**O R D E R**

Steven Stewart, a Wisconsin prisoner, appeals the grant of summary judgment in favor of the prison staff whom he sued under 42 U.S.C. §1983. He brings three claims: First he accuses the defendants of violating the Eighth Amendment in how they treated his bladder condition, which required him to use a catheter. Second he asserts that they violated the First Amendment by retaliating against him for complaining about the treatment. Finally Stewart asserts a state-law claim for malpractice in how they

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

medicated a urinary tract infection. Because we agree with the district court that no genuine issue of material fact supports these claims, and Stewart's challenges to other procedural matters are baseless, we affirm.

We first recite in the light most favorable to Stewart the facts he presents on appeal on his Eighth Amendment claim. See *Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). (Although the allegations in his complaint date back to 2005, on appeal Stewart principally discusses only events after his transfer to Columbia Correctional Institution in January 2013.) Stewart suffers from neurogenic bladder, a condition involving nerve damage producing lack of bladder control. He requires a catheter to urinate. Before coming to Columbia Correctional Institution, a prison doctor at his prior prison allowed him to alternate between a Foley catheter (an indwelling catheter that need only be changed periodically) and straight catheters (inserted temporarily to urinate and then removed). That doctor also allowed him to take Vicodin, a narcotic for pain relief, when changing his catheter, though the doctor (whose treatment Stewart does not challenge on appeal) later said that the drug was only "for comfort" and not medically necessary. The doctor also let him change his catheter in private.

At Columbia, Stewart faced two issues regarding his catheter. The first was his desire to continue to take Vicodin while changing the catheter in private. At his intake exam at Columbia, a doctor decided that Stewart would use a Foley catheter and change it monthly. The doctor therefore allowed Stewart to receive Vicodin only once per month. But in February and May 2013, a nurse did not give Stewart any Vicodin because she did not see it on his medical profile, though at the May appointment she offered him lidocaine jelly for pain relief. Stewart, however, refused to change his catheter without Vicodin. At his next appointment in June 2013, another doctor renewed the prescription, calling it "a chronic routine for [Stewart]." With the drug now available to him, Stewart changed his catheter for the first time since arriving at Columbia five months earlier.

Stewart continued to refuse to change his catheter unless he received Vicodin and was unwatched. He got Vicodin at his next appointment in July, but because medical staff insisted on watching to ensure that he changed the catheter properly, he refused to change it. After Stewart's refusal, his doctor discontinued the prescription. Without the Vicodin, Stewart refused to change his catheter for the next few months. In November another doctor prescribed Vicodin for Stewart but then canceled the order the same day, believing that Stewart "has a history of taking Vicodin and not doing [a]

catheter change." (Stewart disputes this.) When two nurses became alarmed that Stewart was refusing to change his catheter, they persuaded another doctor to give Stewart Vicodin *and* to let him change the catheter unwatched. He saw another doctor in December 2013 who refused to prescribe Vicodin because it "would not be standard practice and is not medically necessary." Stewart then refused to attend his next two monthly appointments. But he changed his catheter again in March 2014, when staff gave him Vicodin (after apparently thinking that he had an ongoing prescription) and allowed him to change the catheter in private. He received Vicodin again in April. But by the time he received the permission and supplies to change the catheter alone in his cell, the Vicodin had worn off, so he refused to change the catheter. Because of this refusal, another doctor canceled his Vicodin prescription.

The second issue concerns the timing of when Stewart received the supplies that he requested to change his catheter. Sometimes when Stewart needed or wanted to replace a monthly catheter, a new one was not immediately available. One time, when his Foley catheter fell out, a nurse offered him a straight catheter kit as a replacement because the prison was temporarily out of Foley catheters. Stewart, though, refused to take the straight catheter, so the nurse explained how to reinsert his used Foley catheter until he could get a new one. Another time Stewart received an incomplete catheter kit (it was missing sterile materials and a specimen container) and other times he had to wait for new supplies to arrive or for his upcoming appointment. The waits ranged from a couple of hours to a week.

To analyze these two issues under the Eighth Amendment, we may assume that Stewart's bladder condition is objectively serious. See *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (explaining that medical condition diagnosed by doctor as requiring treatment is objectively serious). To succeed on his Eighth Amendment claim, though, Stewart also must offer evidence that the defendants were deliberately indifferent to that condition. See *Perez*, 792 F.3d at 776. Deliberate indifference means they knew of significant risks to Stewart's health but provided him with "blatantly inappropriate" treatment, ignored the recommendation of a specialist, or needlessly delayed his treatment (and thereby increased his pain). *Id.* at 777; see also *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016); *Petties v. Carter*, 836 F.3d 722, 728–31 (7th Cir. 2016) (en banc), as amended (Aug. 25, 2016), petition for cert. filed, (U.S. Nov. 22, 2016) (No. 16–676).

The defendants did not violate the Eighth Amendment. Stewart believes that the nurse who overlooked his prescription on his medical profile, the doctors who

cancelled the Vicodin prescription, and staff who asked to inspect his catheter changes were deliberately indifferent to his medical needs. He is wrong for three reasons. First it is undisputed that Vicodin is not medically necessary for a catheter change. The doctor who first prescribed Vicodin at Stewart's other prison (and whose treatment Stewart does not challenge on appeal) said that Vicodin was not medically necessary to change a catheter. Likewise, a doctor at Columbia explained that he prescribed it only because it was "a chronic routine for [Stewart]." And yet another doctor confirmed that he refused to prescribe it because it was "not medically necessary." Stewart, who does not contradict this evidence, may have preferred to change his catheter with Vicodin, but mere disagreement with a doctor's reasonable judgment does not violate the Eighth Amendment. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Second Stewart supplied no evidence that the pain-relief jelly that the nurse offered as an alternative to Vicodin was "blatantly inappropriate." Third Stewart offered no evidence to contradict the opinion that it was medically appropriate to watch him change his catheter to ensure that he did it properly.

Nor did staff violate the Eighth Amendment in how they responded to Stewart's request for supplies to change his monthly catheters. A needless delay in providing medical supplies may violate the Eighth Amendment depending on the "seriousness of the condition and the ease of providing treatment" and whether the plaintiff "provide[s] independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties*, 836 F.3d at 730–31. Stewart describes a few delays in receiving sterile equipment or replacement catheters that range from hours to one week. Although he has argued that these delays cause him pain, he has not sworn to it. More fundamentally though, he has not argued, let alone furnished evidence, that the staff had control over the delays in providing these supplies and could have easily avoided these delays. Without such evidence, the Eighth Amendment claim fails. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Stewart advances two other claims on appeal. In his First Amendment claim, he contends that prison staff punished him for protected speech—filing grievances about his medical treatment and filing this lawsuit. See *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Pearson v. Welborn*, 471 F.3d 732, 740 (7th Cir. 2006). Specifically Stewart argues that a nurse persuaded a doctor to cancel Stewart's Vicodin prescription by writing in November 2013 (about 10 months after coming to Columbia) that Stewart often took Vicodin without changing his catheter. But Stewart needed to present evidence that the nurse wrote this message *because* of his grievances or this lawsuit.

See *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016). And he has proffered no evidence that the nurse even knew about the grievances, see *Morfin v. City of E. Chi.*, 349 F.3d 989, 1005–06 (7th Cir. 2003), let alone that she wrote it in reaction to the grievances or this suit.

Stewart's other substantive claim is that medical staff committed malpractice under Wisconsin law in treating a urinary tract infection before Stewart came to Columbia in 2013. A doctor at his previous prison had prescribed Stewart one antibiotic for his infection, but after a culture later revealed that the bacteria were resistant, Stewart was prescribed a replacement drug. Unknown staff members sent both drugs to Stewart's cell, against medical orders. Stewart then took both medications and alleges that they made him feel "sleepy" and "strange." The next day the first antibiotic was discontinued. Stewart has not identified who brought him both medications, so his claim against the named defendants is based on speculation. Without evidence that the defendants caused his injury, see *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001), the district court correctly granted summary judgment on this claim.

Finally Stewart argues on appeal that the district court erred in three procedural rulings, but we see no reason to reverse. First he argues that the court should not have granted an extension of time to one of the nurses to move for summary judgment *after* the deadline had passed. A district court has discretion to extend time for excusable neglect. See FED. R. CIV. P. 6(b)(1)(B); *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015). Here the court observed that the nurse had not received discovery responses from Stewart and that a brief extension would not prejudice him. Because the delay was harmless and the district court has already decided the merits, "no savings are to be had" by overturning the judgment. *Mommaerts v. Hartford Life and Acc. Ins. Co.*, 472 F.3d 967, 968 (7th Cir. 2007). Stewart next asserts that the district court should have sanctioned defendants and compelled discovery, but he has not elaborated on this argument, so it is waived. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). The same is true for his last contention—that the district court should have recruited counsel for him. Following *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc), the district court reasoned that, despite his relative lack of education and resources, Stewart could nonetheless articulate his arguments, participate in fact discovery, and submit "coherent" filings. On appeal Stewart does not contest this reasoning or identify any areas where he thinks counsel might have made a difference, so we defer to the court's judgment. See *id.* at 658–59.

AFFIRMED