In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3029

JAMES V. PENNEWELL,

*Plaintiff-Appellant,*

*v.*

JAMES PARISH, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:17-cv-00213-LA — **Lynn Adelman**, *Judge.*

ARGUED APRIL 10, 2019 — DECIDED MAY 3, 2019

Before BAUER, MANION, and ROVNER, *Circuit Judges*.

BAUER, *Circuit Judge.* James Pennewell is a Wisconsin state prisoner who became legally blind while incarcerated. He filed a *pro se* complaint alleging numerous defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The district court held that based on his adequate pleadings he was competent to litigate

the case alone during the advanced pre-trial stages of the litigation. Because this determination was an abuse of discretion and the district court failed to give Pennewell's motion particularized consideration, we reverse and remand with instructions to recruit counsel.

## I.  BACKGROUND

### A.  Factual Background

When Pennewell's incarceration began at Dodge Correctional Institution on February 3, 2015, he was blind in his left eye. Shortly thereafter, Pennewell complained to an eye technician of pain and vision abnormalities in his right eye. On February 11, 2015, Pennewell received an eye examination from optometrist James Richter. Pennewell informed Richter the vision in his right eye was declining and that he was seeing spots and flashes of light, which were symptoms consistent with those he experienced when he lost the vision in his left eye due to retinal detachment. He also told Richter his right eye had a cataract that had been present for some time. Richter ordered him new glasses and referred him to the University of Wisconsin Eye Clinic, but failed to follow up.

On March 17, 2015, Pennewell was transferred to John Burke Correctional Center. During his transfer screening Pennewell informed a nurse he was blind in his left eye and experiencing foggy vision and seeing spots in his right eye. Pennewell expressed concern to several nurses over losing the sight that remained in his right eye. On March 30, Pennewell submitted a health services unit request stating:

> I am scheduled for an eye appointment in Madison. My right eye is painful the Tylenol is not working for pain. It feels like there is a tear in my eye. I am very red it drains then dries up. I have to put warm water on a washcloth to get it open.

A nurse saw Pennewell later that day and she told Pennewell to wash his hands regularly and not touch his eyes. On April 6, 2015, Pennewell submitted another request which stated: "The pain in my left eye is getting bad and the vision in my right eye is deteriorating, it's as if there is a retinal detachment. The vision in my right eye has a shadow in the lower right limiting my vision, some flashes of light[.]" The next morning Pennewell saw a nurse and informed her that half of his vision was gone and that he thought he was going to lose vision in his right eye due to retinal detachment. Pennewell was transferred to the Waupun Memorial Hospital Emergency Room that morning. Upon arriving he was immediately transported to the University of Wisconsin Hospital in Madison where he was diagnosed with a retinal detachment that required emergency surgery. Dr. Michael Altaweel performed the surgery later that day.

After surgery Pennewell continued to experience vision problems and filed a medical request on June 29, 2015, that stated his vision was declining. He informed the medical staff that he was experiencing fogginess, double vision, and seeing halos around objects. Pennewell was diagnosed with a macular tear that required surgery. Pennewell requested a second opinion, but was informed by a nurse that the department of corrections did not allow second opinions. On July 16, 2015,

Dr. Altaweel performed surgery that resulted in Pennewell being blind for several weeks. During this time Pennewell was not assisted by prison staff in using the restroom or showering, and had to get his own meals.

Pennewell continued to experience serious problems with his right eye over the next year and filed several complaints seeking medical attention. He was transferred again on March 22, 2016, this time to Sanger B. Powers Correctional Center. There he filed administrative complaints on March 22, 2016, and November 9, 2016, alleging denial of medical attention. Just two days after filing his second administrative complaint, he received notice that his follow-up appointment with the University of Wisconsin Eye Clinic was cancelled due to a staffing shortage. Pennewell again reported eye pain and requested the appointment be rescheduled. He was unable to see a doctor, however, until December 7, 2016, at which time the doctor simply removed loose stitches that had been causing his pain. Pennewell never recovered the vision in his right eye and as a result is legally blind.

## B.  Procedural History

Pennewell filed a *pro se* complaint on February 15, 2017, in the United States District Court for the Eastern District of Wisconsin asserting claims that more than a dozen defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[1]

---

[1]   The complaint included claims against several defendants including many Pennewell was unable to identify. The defendants included the State

(continued...)

In his complaint Pennewell asked the district court to recruit counsel for him. He claimed he could not litigate the case because he was indigent, legally blind, feared retaliation from the department of corrections, and because the department of corrections had refused to provide records or names of defendants. The district court denied this motion because Pennewell had failed to show that he had made reasonable attempts to obtain pro bono counsel. Pennewell filed a subsequent motion that demonstrated he had reached out to several lawyers, but this motion was denied; the district court found Pennewell had demonstrated an understanding of his case through his pleadings.

Pennewell braved discovery alone. He was unable to obtain the opinion of a medical expert, despite the fact that the case involved complex ocular issues. He was unable to depose a single witness or any defendant; his interrogatories often went unanswered. The defendants filed motions for summary judgment arguing that Pennewell had not produced evidence sufficient to support his claims. Pennewell's reply contained essentially no legal argument and failed to cite a single case.

The unnamed eye technicians were dismissed because Pennewell was unable to identify them. Several other defendants were dismissed because Pennewell failed to present evidence of their personal involvement. The district court entered summary judgment in favor of the remaining defen-

---

[1] (...continued)

of Wisconsin Department of Corrections, Dodge Correctional Institution, John Burke Correctional Center and its superintendent, two doctors, two nurses, eye technicians, and security personnel.

dants, holding that despite the existence of evidence that plaintiff had been experiencing serious eye pain for two months, "it[] [was] entirely possible that plaintiff first suffered the condition when he complained about it to [Nurse] Bruns the day before" his surgery.

Pennewell's appeal raises two issues: (1) did the district court err in failing to appoint him counsel, and (2) did the district court err in granting summary judgment in favor of the defendants. We find that the district court abused its discretion by failing to appoint Pennewell counsel; we therefore need not reach the second issue.

## II.  DISCUSSION

The district court correctly identified the appropriate legal standard we articulated in *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007), but the analysis was limited to a single sentence. The question presented on appeal is whether this was an abuse of discretion. Because the district court failed to provide particularized analysis regarding Pennewell's ability to litigate this case and failed to consider the legal and practical difficulties his case presented, we reverse and remand with instructions to appoint counsel.

We review for abuse of discretion a district court's denial of a motion to appoint counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). A district court abuses its discretion if "(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Id.* Our inquiry is limited to whether the

district court erred based on what it reasonably could have known when it ruled. *Pruitt*, 503 F.3d at 659. Even if the district court abused its discretion, we will reverse only if prejudice is shown. *Id.* Prejudice exists if there is a reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation. *Id.*

There is no constitutional right to court appointed counsel in federal civil litigation but Congress has vested district courts with discretion to appoint an attorney for any litigant who cannot afford one. 28 U.S.C. § 1915(e)(1); *see Pruitt*, 503 F.3d at 653 (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005)). Discretion is a nebulous thing, but it is tethered by sound legal principles; the two part test established by this Court is: (1) "has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so," and (2) "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654. If the answer to the first question is yes and the second question no, the district court must request counsel. *Walker*, 900 F.3d at 935. The parties here dispute only the answer to the second question.

When determining whether to appoint counsel, the district court must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel. *Pruitt*, 503 F.3d at 655. Competence and difficulty are intertwined, therefore "[t]he difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* The question is not whether the *pro se* litigant would be as effective as a lawyer, but rather

whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case. *Id.* The inquiry considers all tasks that normally attend litigation including evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial. *Id.* To the extent it is able, the district court must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations, and any other characteristics that may limit the plaintiff's ability to litigate the case. *Id.* The district court must also consider the complexities of the advanced stages of litigation when the case has moved past the pleading stage. *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015).

Some factors this Court has deemed important are worth repeating. We have noted on several occasions that a prisoner who is transferred to a facility where the events underlying his claims did not take place faces additional hurdles. When that happens it must be addressed by the district court because the plaintiff may not have access to witnesses, documents, or defendants necessary to make his case. *See James v. Eli*, 889 F.3d 320, 327 (7th Cir. 2018) (collecting cases). We have also recognized that prisoners may be ill-equipped to litigate constitutional claims that involve the state of mind of the defendant because "even a relatively sophisticated litigant may find it difficult to identify and present the right type of evidence." *Id.* (citing *Pruitt*, 503 F.3d at 664 (Rovner, J., concurring)). This Court has also noted that cases involving complex medical issues are difficult for *pro se* litigants, "particularly … where a prisoner has received at least *some* medical treatment, because

he must show a substantial departure from accepted professional judgment, practice, or standards, and expert medical evidence is often required to prove this aspect of his claim." *Id.* (collecting cases).

Considering all of the above, we find that the district court abused its discretion by failing to give Pennewell's request for counsel particularized consideration. The district court failed to address the difficulty presented by Pennewell's claims, which involved proving a culpable state of mind of several medical professionals, security personnel, and prison policymakers. Pennewell's complaint indicates that he received *some* treatment, putting him in the untenable and abstruse position of unearthing evidence that a substantial departure from accepted medical standards occurred. *Eli, 889 F.3d 320*, 328 (citing *Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2013); *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005); *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). Pennewell's complaint also noted his claims involve complex medical issues including retinal detachment, macular tears, virectomy, artificial lens implants, laser surgery, and artificial plug implants in his tear ducts. Additionally, Pennewell informed the district court that discovery would be especially difficult because the defendants had already engaged in uncooperative behavior. *See Dewitt v. Corizon,Inc.*, 760 F.3d 654, 658 (7th Cir. 2014) (holding the district court abused its discretion by failing to address the plaintiff's challenges "as a blind and indigent prisoner with a tenth-grade education and no legal experience, faced in being able to investigate crucial facts and depose witnesses, doctors, and other allegedly resistant prison personnel."). Further complicating discovery was the fact that

the underlying claims span two years, occurred at two different prisons, and Pennewell had been transferred a third time which created the additional challenge of identifying several defendants while at a different facility.

And Pennewell faced other problems. First, and most obvious, he was legally blind and required visual aids to read and write. He also informed the court that his experience as a blind inmate had caused his mental health to deteriorate. *See Walker*, 900 F.3d at 933 ("Not every cognitive limitation will require the district court to recruit a lawyer, but the court should have considered how [plaintiff's] mental health history would affect his ability to think on his feet at trial.").

Appellees assert that Pennewell was not prejudiced by the denial of his requests for counsel because additional discovery and improved briefing would not have resulted in a different outcome.

Prejudice may be established by a litigants poor performance before or during trial. *Pruitt*, 503 F.3d at 659–60. We will find prejudice if there is a reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation. *Id.* at 659. Pennewell did not procure a medical expert or any evidence that indicated what a reasonable medical professional would have done under the circumstances. Furthermore, he failed to take depositions of any defendant or witness and many of the interrogatories he sent to defendants went unanswered. *Id.* (noting that prejudice might exist "if the record demonstrates that the *pro se* plaintiff was incapable of engaging in any investigation or locating and presenting key witnesses or evidence."). Finally, Pennewell's

motion in opposition to summary judgment contained neither legal arguments nor citations to any relevant case law. The appointment of counsel will remedy these deficiencies. We reject the defendants argument that a lawyer would not have made a difference in this case and find that there is a reasonable likelihood that the appointment of counsel would have made a difference in the outcome of the litigation.

### III. CONCLUSION

For the foregoing reasons we vacate the district court judgment and remand the case for further action consistent with this opinion.