In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2404

DANIEL A. SCHILLINGER,

*Plaintiff-Appellant,*

*v.*

JOSH KILEY, RANDY STARKEY,
and RICHARD MATTI,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 16-cv-529-wmc — **William M. Conley**, *Judge.*

ARGUED SEPTEMBER 25, 2019 — DECIDED APRIL 6, 2020

Before FLAUM, SYKES, and SCUDDER, *Circuit Judges.*

SYKES, *Circuit Judge.* Daniel Schillinger, a Wisconsin prisoner, was brutally assaulted by another inmate as the prisoners were walking back to their housing unit after recreation. He suffered a fractured skull, broken teeth, cuts, and other serious injuries. Schillinger sued three prison guards under 42 U.S.C. § 1983 for violating his Eighth Amendment rights by failing to protect him from the attack.

The district judge screened the complaint and permitted Schillinger to proceed on a claim that the officers failed to take preventive action after learning of hostility between Schillinger and his attacker during the recreation period shortly before the attack. The judge later ruled that Schillinger had not exhausted his administrative remedies on this claim and entered summary judgment for the defendants.

On appeal Schillinger argues that the judge should have gleaned from his complaint two additional factual grounds for a failure-to-protect claim against the officers: that they did not respond fast enough to an alarm about a medical emergency on his unit once the attack was underway and they stood by without intervening to stop the attack while it was ongoing. He also challenges the judge's exhaustion ruling.

We reject these arguments and affirm. The judge did not overlook plausible alternative factual grounds for the claim against these defendants. And we find no fault with the judge's exhaustion ruling. Though Schillinger pursued a complaint through all levels of the prison's inmate-complaint system, he never mentioned the claim he raised in this litigation: that the three officers were aware of threatening behavior by the attacker in the recreation area before the assault and failed to take steps to protect him.

## I. Background

Schillinger was a prisoner at Wisconsin's Secure Program Facility at the time of the assault.[1] We take the following

---

[1] Schillinger was transferred to Racine Correctional Institution in August of 2016.

factual allegations from his complaint, accepting them as true for present purposes. On the morning of September 17, 2015, Schillinger was playing chess with inmate Diaz in the recreation area in the prison's Delta Unit. At about 10:05 a.m. they were approached by another inmate named Terry, who made threats and demanded that Schillinger buy canteen items for him.

Correctional Officer Randy Starkey approached the group and asked, "are you guys horseplaying or are you for real?" Diaz told Officer Starkey everything was under control. Officer Starkey signaled for assistance from Correctional Officer Josh Kiley, who came over and asked the inmates if they were going to fight. Diaz said, "no[,] it's all good."

Recreation ended at about 10:15 a.m. As Schillinger started to walk back to his cell in Charlie Unit, Officers Starkey and Kiley asked if he was going to be okay. Schillinger said he didn't know because Terry made threats and he did not trust Terry. Shortly thereafter, an inmate named Clark in the Delta Unit cellblock overheard Officer Starkey tell an unidentified "John Doe" sergeant that he thought there was going to be a "rumble." A couple of minutes after overhearing this conversation, Clark heard a radio alarm calling for a medical response on Charlie Unit.

When Schillinger and Terry arrived back in Charlie Unit, Terry attacked. At the time of the assault, there were "no staff on the range," and Terry beat Schillinger for approximately eight to ten minutes before help came. When "staff" finally arrived, they did not immediately break up the fight but simply said "stop" for one to two minutes and made no effort to intervene until after Schillinger was knocked un-

conscious. He suffered a skull fracture, cuts to the face requiring stitches, a cut on his elbow, a lost tooth and a chipped tooth, possible permanent nerve damage on the side of his mouth, and a bruised lung.

On September 27 Schillinger filed an offender complaint with the prison's inmate-complaint system regarding the September 17 beating. He described his injuries and questioned why "there was no correctional officer on the range at the time of the incident" and "why it took so long for them to respond." He did not name his attacker. He did not identify Officers Starkey or Kiley or refer to the involvement of an unnamed sergeant. He made no mention of threatening behavior by the attacker before the assault.

In the meantime, prison security officials and the Grant County Sheriff's Office commenced an investigation of the beating. As a result, the complaint examiner saw no need for a duplicative administrative investigation and dismissed Schillinger's grievance without further action. That decision was affirmed on administrative appeal.

Schillinger then filed a pro se complaint in federal court against Officers Starkey and Kiley, a John Doe sergeant, the prison's security director, and the warden seeking damages under § 1983 for violation of his Eighth Amendment rights. As required by the Prison Litigation Reform Act ("PLRA" or "the Act"), 28 U.S.C. § 1915A, the judge screened the complaint to identify facially plausible claims. He concluded that the complaint stated an Eighth Amendment failure-to-protect claim against Officers Starkey and Kiley based on the allegations that they were aware of Terry's threat against Schillinger during recreation and took no steps to protect him from the ensuing attack. The judge also identified a

failure-to-protect claim against a "Sergeant John Doe" based on the allegation that inmate Clark overheard Officer Starkey and the sergeant discussing a potential fight. The judge dismissed the warden and the security director from the suit because Schillinger did not allege that they were personally involved in these events.

Sergeant John Doe was later identified as Sergeant Richard Matti. Officers Starkey and Kiley and Sergeant Matti moved for summary judgment, arguing that Schillinger failed to exhaust his administrative remedies on the failure-to-protect claim the judge had identified. The judge granted the motion, explaining that Schillinger's offender complaint did not allege that the defendants were aware of Terry's threat and thus had reason to believe that Schillinger might be attacked and failed to take preventive action. Rather, the grievance questioned only why no staff were present on the range where the assault took place and why it took so long for staff to come to Schillinger's aid after the attack began.

Schillinger appealed, still representing himself. We struck the original briefs and recruited pro bono counsel to assist him.[2]

## II. Discussion

With the benefit of pro bono representation, Schillinger advances two arguments on appeal. First, he challenges the judge's screening order, arguing that the judge should have permitted him to proceed on two additional factual grounds for his failure-to-protect claim: that the defendants inade-

---

[2] Attorneys David Feder and Meir Feder of Jones Day accepted the representation and have ably discharged their duties. We thank them for their assistance to their client and the court.

quately responded to the emergency medical alarm and failed to intervene after arriving at the scene of the attack. Second, he challenges the judge's exhaustion ruling.

Both arguments rest on aspects of the PLRA. The Act requires district courts to screen prisoner complaints and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint … fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). At screening the judge must apply the standards for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, permitting claims to go forward only to the extent that the prisoner has pleaded facts to demonstrate that he has a plausible claim for relief. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012).

A claim is plausible when the complaint alleges enough facts to draw the reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility. *Id.* A claim for relief may not proceed merely because some set of facts can be imagined that would entitle a plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007). Pro se complaints are construed more forgivingly than a pleading prepared by a lawyer. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). We review the judge's screening order de novo, accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Id.*

The judge permitted Schillinger to go forward on one Eighth Amendment claim: a failure-to-protect claim against Officers Starkey and Kiley and Sergeant Matti based on the

allegations that they failed to act to protect Schillinger after they learned of Terry's threat and the possibility of a rumble.

That ruling was unquestionably sound. A prison official may be liable for one prisoner's attack on another prisoner if two conditions are met. First, there must have been a substantial risk of serious harm to the prisoner who was attacked. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the prison official must have acted with deliberate indifference to the health or safety of the prisoner. *Id.* The judge correctly concluded that Schillinger plausibly alleged that these three officials were deliberately indifferent to a substantial risk of serious harm because they learned of the threatening incident with Terry and failed to take steps to protect him.

Schillinger argues that the judge overlooked additional factual grounds for a failure-to-protect claim against the defendants based on the complaint's allegations about a slow response to the emergency medical alarm and the failure by staff to quickly intervene once they arrived at the scene of the attack. We disagree. The allegations concerning the alarm and the failure to break up the attack do not support a plausible failure-to-protect claim against *these* defendants.

As to the emergency alarm, the complaint contains a single factual allegation: that inmate Clark heard an alarm radio calling for a medical response on Charlie Unit a few minutes after overhearing a conversation between Officer Starkey and a John Doe sergeant about a possible rumble. The allegations about inadequate intervention after the attack began are similarly thin: that the complaint says only that

"staff" did not come for eight to ten minutes, and when they did arrive, they waited too long to stop the assault.

These allegations do not provide a plausible alternative factual basis for a different or additional failure-to-protect claim against Officers Starkey or Kiley or Sergeant Matti. The complaint says that all three officers were on duty in Delta Unit, but the alarm Clark allegedly overheard reported a medical emergency on Charlie Unit. Nothing in the complaint suggests that they had a responsibility to leave their posts and respond to an emergency in a different unit. Moreover, no allegations place these officers at the scene of the attack. Although Schillinger made other specific allegations against these three officers, he did *not* allege that they were among the "staff" that responded too slowly once the attack was underway and stood idly by while the beating continued. There is nothing in the complaint that would support that inference.

Schillinger relies on *Velez v. Johnson*, but the circumstances in that case were far different. In *Velez* the plaintiff claimed that he pushed an emergency call button in his jail cell when his cellmate threatened him; he further alleged that the defendant Johnson was the officer in charge of the control station in his pod and was responsible for monitoring and responding to emergency calls from inmates in their cells, yet failed to take action to avert the brutal attack that followed. 395 F.3d 732, 734–36 (7th Cir. 2005). That's a far cry from the allegations here, which place Officers Starkey and Kiley and Sergeant Matti on duty in an entirely different unit in a large prison and provide no factual basis from which to infer that they even heard the medical alarm, had a duty to respond, or were among the "staff" that arrived too slowly

and did too little to stop the attack. We find no flaw in the judge's screening order.

That brings us to the judge's summary-judgment ruling, which rests on a different requirement in the PLRA. The Act provides that a prisoner may not bring a suit in federal court challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The judge determined that Schillinger had not exhausted the lone claim that survived screening. We review exhaustion rulings de novo. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

The PLRA does not specify what a prisoner must do to exhaust his administrative remedies. Those requirements are found in the law establishing the relevant administrative remedies: state law for state prisons and federal law for federal prisons. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Because this case concerns conditions in a Wisconsin prison, we look to the grievance procedures established by Wisconsin law.

There is no dispute that Schillinger pursued a grievance through all levels of the inmate-complaint system in a timely fashion, receiving decisions at every stage. This exhaustion dispute centers on a provision of the Wisconsin Administrative Code that requires prisoners to "clearly identify the issue" in their offender complaints. WIS. ADMIN. CODE DOC § 310.09 (2002) (amended 2018). The judge concluded that Schillinger's grievance did not clearly identify the failure-to-protect claim at issue in this litigation; instead, it focused entirely on the absence of correctional officers on the range where the attack occurred and the slow response once the attack was underway.

The regulation specifying that a prisoner must "clearly identify the issue" in an inmate complaint is not more specific about what it takes to satisfy this requirement. When the applicable regulations provide little guidance regarding the required contents of a prison administrative complaint, we have held that an inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of "the nature of the wrong for which redress is sought." *Strong*, 297 F.3d at 650.

This notice principle is grounded in the purposes of exhaustion under the PLRA. The exhaustion requirement protects the prison's administrative authority by giving it an opportunity to correct its own mistakes before suit is filed against it in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). In addition, exhaustion promotes efficiency because a claim can generally be resolved much more quickly in an administrative proceeding than in litigation in federal court. *Id.* Accordingly, we've held that a prisoner satisfies the exhaustion requirement when he gives a prison "notice of, and an opportunity to correct, a problem." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

Schillinger's offender complaint did not provide adequate notice of the failure-to-protect claim at issue here. The complaint begins by identifying the date and approximate time of the attack: "On September 17, 2015, right after courtyard in the morn[ing,] I was beat up pretty bad." It then lists Schillinger's injuries. The next and final passage identifies his core complaint against the prison:

> I was wondering why there was no correctional
> officer on the range at the time of the incident.
> And why it took so long for them to respond to

> my aid. I was also told this [on] Friday[,] September 18, 2015[,] in the morn[ing] at the hospital. By a correctional officer. He stated to me[,] it sure took them awhile to respond to you. If they would of responded right away, I wouldn't be in this position I'm in now. They said it would take awhile for my injuries to heal up.

That concludes the complaint. Officers Starkey and Kiley are not mentioned. Nor is Sergeant Matti—or an unidentified sergeant, for that matter. The attacker is not identified, and there's no reference to an earlier confrontation between Schillinger and the attacker, much less a previous threat. In short, there are no allegations that any prison guards—even unnamed guards—had reason to know in advance that an attack might occur and failed to take appropriate measures to prevent it.

Instead, Schillinger's grievance raised two entirely different problems: no guards were nearby when the attack occurred, and the responding guards took too long to come to his aid. This did not give the prison notice of the claim at issue here, which concerns events preceding the attack and conduct by officers who were not mentioned in the grievance. Accordingly, the judge correctly concluded that Schillinger failed to exhaust the single claim that survived screening. Summary judgment for the defendants was proper.

AFFIRMED