NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 23, 2020[*]
Decided July 24, 2020

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-2883

| | |
|---|---|
| CHARLES W. HART, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 18-C-0092 |
| | |
| JAMES GREER, et al., | Lynn Adelman, |
| *Defendants-Appellees.* | *Judge.* |

## O R D E R

Charles Hart, an inmate with painful keloids, sued prison health-services supervisors under 42 U.S.C. § 1983 for deliberate indifference to his need for medical care in violation of the Eighth Amendment. During the litigation, Hart moved three times for recruited counsel; each time, the district court determined that Hart was able to represent himself. The court then entered summary judgment for the defendants, concluding that none had been personally involved in denying Hart treatment. Hart

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

now appeals, arguing only that the district court erroneously denied his requests for counsel. We see no abuse of discretion in the court's decisions and, therefore, we affirm.

We view the facts and draw all reasonable inferences in favor of Hart, the nonmoving party. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 963 (7th Cir. 2019). For many years, Hart, an inmate at Wisconsin's Racine Correctional Institution, has had numerous painful keloids (overgrown scar tissue up to 10 cm long) spread across his chest and back. His primary care provider requested a referral for surgery, but the prison's healthcare committee denied it. After that, Hart submitted letters and complaints about his keloid treatment to the prison health-services supervisors, but they did not respond meaningfully or intervene in his treatment. Hart then sued these supervisors, alleging that they had turned a blind eye to his need for treatment for a serious medical condition.

Hart filed three unsuccessful motions asking the court to recruit counsel to represent him, the first before the defendants answered Hart's complaint. That motion simply stated that the case was "too complex[]." The court disagreed, noting that "Hart's complaint and his communications with the court indicate that he has a good grasp of his claims and that he is able to clearly communicate why he believes he is entitled to [] relief." It further explained that the most important evidence would be Hart's "personal knowledge of his interactions with [the] defendants" and that "it appears that he is able to accurately communicate what happened to him."

Hart's second motion raised concerns about navigating the ongoing discovery process: He stated that he struggled to "properly investigate" the case or interview witnesses; he had no access to a camera to document his keloid growth; he feared he would go blind because of his glaucoma; and the defendants refused his discovery requests and retaliated against him. The court, however, concluded that Hart's filings were "clear and easy to understand"; he had a "good grasp on what happened to him"; that, based on his filings, he was "capable" of presenting his own case; and that "[o]n the spectrum of cases "his was "not so complicated that he cannot do it on his own." In response to Hart's more specific concerns, the court stated that he could move to compel discovery or for more time; further, if his situation changed (i.e., if his eyesight failed), he could request counsel again.

In his final motion, filed after the defendants moved for summary judgment, Hart repeated his concerns and added that, in their motion, the defendants "twisted the blame" for their actions "to an unknown third party." The district court denied the motion, concluding that Hart had not "explained what has changed other than his

perception that the defendants had changed the basis of his lawsuit," and that the summary-judgment motion was responsive to Hart's claims. To the extent that Hart asked to reopen discovery, the court stated that it would consider the request if Hart made "a showing of why it should be reopened as required" by Federal Rule of Civil Procedure 56(d).

The court later entered summary judgment for the defendants, concluding that Hart lacked evidence that any of them had been personally involved in the decision to deny his surgery, or that they had ignored or interfered with any requests for medical treatment.

On appeal, Hart argues only that the district court erroneously denied his motions to recruit counsel. Because it is undisputed that Hart made reasonable efforts to secure his own lawyer, we ask only whether the court abused its discretion in concluding that Hart was capable of representing himself given the difficulty of the case. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc); *Pennewell v. Par.*, 923 F.3d 486, 490 (7th Cir. 2019). Even if the court erred, we would reverse only if the failure to recruit counsel caused prejudice. *Pruitt*, 503 F.3d at 659.

Hart contends that the district court did not address his competence to litigate his claim with enough particularity. He argues that the court should have considered his needs to seek out medical expertise and to prove the defendants' state of mind, and that it did not account for the increasing complexity of the litigation as the case proceeded to summary judgment.

Putting to one side the fact that Hart did not raise these specific concerns in the district court and, therefore, has likely waived his arguments, *see Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010), we see no error in the court's denial of Hart's motions. Certainly, we have recognized the importance of counsel in cases that require proving state-of-mind or complex medical issues when the quality of medical care is at issue (although we have no bright-line rule). *See Walker v. Price*, 900 F.3d 933, 939–40 (7th Cir. 2018). Here, though, Hart's claims against the healthcare supervisors concern their alleged failure to respond to his requests for medical treatment; this does not implicate any complex medical issues. Rather, as the court stated, Hart's "personal knowledge of his interactions with [the] defendants" was the most important evidence.

Moreover, the court thoroughly examined Hart's competence in relation to the complexity of the case each time he requested counsel. It explained that his filings were "clear and easy to understand"; he had a "good grasp on what happened to him"; and,

based on his filings, he was "capable" of "accurately communicat[ing] what happened to him." As discovery progressed, the court offered information about how to navigate the increasing complexity of the proceedings: Hart could file motions to compel discovery or for more time if the defendants were not cooperating. It acknowledged Hart's concern that his glaucoma would prevent him from representing himself but explained that he could request counsel again if needed. Hart filed no motions to compel discovery, and he requested more time only in his third motion for counsel—two months after the discovery period had closed.

The question is not whether Hart could present his case as effectively as a lawyer, but only whether the case was beyond his abilities. *McCaa v. Hamilton*, 959 F.3d 842, 844 (7th Cir. 2020); *Pruitt*, 503 F.3d at 655. The district court applied the appropriate framework and reasonably concluded that given Hart's demonstrated competence and the non-technical nature of his claims, he could represent himself at the pretrial stage.

AFFIRMED