NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 28, 2021[*]
Decided April 29, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1611

| | |
|---|---|
| TIMOTHY G. TACKETT, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 19-CV-258-JPS |
| | |
| CATHY JESS, et al., | J.P. Stadtmueller, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Beginning in 2017, Timothy Tackett, a Wisconsin prisoner, had multiple surgeries for nerve damage, inflammation, and tissue damage in his left foot caused by a July 2015 accident at his prison job. Alleging that their deliberate indifference caused his prolonged pain and eventual toe amputation, Tackett sued several prison officials, medical providers, and employees at Racine Correctional Institution and Fox Lake Correctional Institution under 42 U.S.C. § 1983 and state tort law. The district court

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

disposed of all claims in favor of the defendants. Because the court did not err in granting the defendants' motions to dismiss and for summary judgment, we affirm.

## Background

Tackett began feeling pain in his left foot after dropping a printer on it in early July 2015. He was housed at Racine at the time and requested treatment within days, but received only Tylenol, ibuprofen, and a cane for three months. In October 2015, Dr. Kevin Krembs treated Tackett's pain with nortriptyline and steroid injections after an x-ray showed a "normal" left foot. The treatment did not alleviate Tackett's pain, however, and another doctor at Racine diagnosed him with nerve damage after reviewing a second x-ray in April 2016. Tackett also saw an external specialist that month, but staff at Racine never booked the recommended follow-up appointment.

Tackett was prescribed orthotics to manage his pain, and he attended fittings from July through September 2016. By November, his condition had improved slightly, though he continued to feel pain. In response to Tackett's reports of ongoing pain, Dr. Krembs prescribed stronger medication (gabapentin) in January 2017. Tackett wrote letters to Racine officials requesting the follow-up specialist appointment and describing his pain to no avail, but he did not file an administrative grievance.

Tackett was still managing his foot condition with pain medication and orthotics when he was transferred to Fox Lake in June 2017. Upon arrival, Tackett's sneakers, which accommodated his orthotics, were confiscated due to a tear that could be used to hide contraband. Two months later, Tackett saw an outside podiatrist, who diagnosed him with neuroma, a painful nerve and tissue condition in his foot, and gave him a cortisone injection. The podiatrist recommended surgery, and a Fox Lake doctor ordered a magnetic resonance image (MRI), which showed inflammation (capsulitis and bursitis) in his toe. After submitting inmate complaints requesting surgery in October and early November 2017, Tackett had surgery in November.

Tackett returned to Fox Lake the evening of his surgery. The surgeon had prescribed ibuprofen and hydrocodone, a controlled substance, "q6hr PRN," or every six hours as needed, but Fox Lake medical staff entered the hydrocodone prescription as "quarter in die as needed," meaning he would receive medications four times a day and only during medical pass, which did not occur overnight. When Tackett awoke in the middle of the night in pain and requested hydrocodone, night supervisors Glenn Bornick and Lonel LeBlanc refused after consulting the prescription. They provided him

with ice instead, and Tackett submitted an inmate complaint about his medication deprivation.

Tackett improved for several months, but in April 2018 another podiatrist, Dr. Sarik Parikh, diagnosed him with a flail toe and recommended another surgery. Tackett's flail toe was amputated in July, and he was again prescribed hydrocodone every six hours, but night officers again denied Tackett the pain medication based on the prescription on file. Prison officials also declined to authorize a prescription for Lyrica; per prison policy, lower-risk medications are substituted for Lyrica unless they are proven ineffective. Tackett submitted two inmate grievances due to these deprivations, and Lyrica was approved two months later.

In September 2018, Tackett attended fitting sessions for new orthotics ordered by Dr. Parikh. Around the same time, he had two post-surgery follow-up appointments cancelled without explanation, and he continued to experience pain. Tackett saw Dr. Parikh again in January 2019. At this appointment, Dr. Parikh recommended another surgery and mentioned that Tackett's condition likely would not have been so severe had his original injury been promptly treated.

In March 2018, Tackett sued 21 people from the Racine and Fox Lake institutions for deliberate indifference in violation of the Eighth Amendment and for state-law negligence and medical malpractice. After the court in the Western District of Wisconsin dismissed seven defendants at screening, the case was transferred to the Eastern District. Tackett moved for recruited counsel several times, but the court denied each motion. The defendants all filed motions to dismiss, which the court granted in part; it later entered summary judgment for the remaining defendants. Tackett appeals.

## Analysis

### A. Dismissal of Racine Medical Defendants

Tackett challenges the district court's determination that he failed to exhaust his administrative remedies for the claims against the Racine defendants, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). He argues that the complaints he submitted after his transfer to Fox Lake satisfied the exhaustion requirement for the Racine defendants under the continuing-violation doctrine because his insufficient medical care began at Racine and continued after his transfer.

The continuing-violation doctrine does not save Tackett's claims from dismissal for lack of exhaustion, however. This is not an instance where a single grievance serves as notice of an ongoing condition or policy, as in *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Tackett's pain was ongoing, but the failure to treat it adequately and schedule appointments were discrete acts, not a single course of conduct that continued even after his transfer to a new institution. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–15 (2002).

Tackett's argument that the complaints he submitted at Fox Lake exhaust against the Racine defendants cannot stand. Other than the requirement that it occur, which comes from § 1997e(a), exhaustion of remedies is governed by state law. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Riccardo v. Rausch*, 375 F.3d 521, 523 (7th Cir. 2004) ("Prisoners must follow state rules about the time and content of grievances."). We have held that under the applicable provision of Wisconsin law, which requires prisoners to "clearly identify the issue" they are grieving, a grievance suffices "if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (internal citation omitted).

The district court reasonably concluded that Tackett's Fox Lake complaints failed to exhaust the claims against the Racine medical defendants. True, neither the federal statute nor the Wisconsin regulations require grievances to name individuals responsible for the complained-of harm. *See Jones*, 549 U.S. at 218. But Tackett's grievances focused on the delay in scheduling his surgery and his post-surgery medication deprivation and only generally referenced continuing pain since 2017 (when he arrived at Fox Lake); they did not give notice that he was complaining about a lack of medical care at Racine, so there was no opportunity for the Department of Corrections to investigate or correct any problem there. *See Schillinger*, 954 F.3d at 995. Further, the two letters Tackett sent while at Racine were insufficient to exhaust, because a prisoner must properly use the prison's formal grievance process. *See Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). Letters to officials—in lieu of formal complaints—cannot be substituted for this process. WIS. ADMIN. CODE § DOC 310.07.[†]

---

[†] Tackett does not challenge the dismissal of defendant Lyyski on exhaustion grounds and concedes that the dismissal of the Wisconsin Department of Corrections complaint officers (Bartow, Alsum, Davidson, and Jess) was proper. He also raises no argument regarding the state medical malpractice claims against the Racine medical defendants.

### B. Dismissal of Negligence Claims against Non-Medical Defendants

Tackett also attacks the district court's grant of defendants' motion to dismiss the state-law negligence claims against Racine's warden, who, he argues, knew of his medical deprivations, and Fox Lake officers LeBlanc and Bornick, who refused to provide Hydrocodone the night after Tackett's first surgery. He contends that the court improperly applied Wisconsin's notice of claim statute, which requires litigants bringing civil claims against state employees to notify the state attorney general of a potential suit within 120 days of the incident. WIS. STAT. § 893.82(3), (5m). Tackett asserts that he did not need to comply with the notice statute, because the statute exempts medical malpractice suits, and these defendants acted in a medical capacity. WIS. STAT. § 893.82(5m). Although Tackett's claims stemmed from medical inattention, he sued the non-medical defendants for negligence. Non-doctors may not be sued for medical malpractice for the purposes of the notice statute, *Patients Comp. Fund v. Lutheran Hosp.-LaCrosse, Inc.*, 588 N.W.2d 35, 41 (Wis. 1999) (noting only physicians and nurse anesthetists are mandatorily liable for malpractice claims); *see also* WIS. STAT. § 655.002, so the district court did not err in granting this part of the motion to dismiss.

### C. Summary Judgment for Fox Lake Non-Medical Defendants

Tackett next attacks the entry of summary judgment on his Eighth Amendment claims against night officers LeBlanc and Bornick at Fox Lake. He argues that the court erred in resolving material factual disputes at the summary judgment stage regarding the officers' knowledge of, and failure to address, his pain. Specifically, he maintains that they impermissibly denied him hydrocodone and should have consulted with medical staff about his prescription.

Tackett's argument fails because no material issue of fact remains for officers LeBlanc and Bornick. As non-medical officials, they were entitled to rely on medical personnel—and their prescriptions—when deciding whether to dispense medications to prisoners. *See Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021). LeBlanc and Bornick consulted the prescription on file—directing that Tackett receive hydrocodone upon request at each of the four medical passes (which did not occur at night)—before denying him pain medication. Because they justifiably relied on the prescription on file rather than the discharge instructions and prescription Tackett presented, LeBlanc and

---

The district court relinquished supplemental jurisdiction over those claims and properly dismissed them without prejudice, *see Harvey v. Town of Merrillville*, 649 F.3d 526, 533 (7th Cir. 2011), so Tackett is free to bring them in state court.

Bornick were not deliberately indifferent in failing to further consult medical personnel at one in the morning or provide hydrocodone in spite of the entered prescription. That they further commented on inmates' potential abuse of prescribed pain medication does not overcome the lack of deliberate indifference here.

### D. Summary Judgment for Fox Lake Medical Defendants

Tackett further challenges the entry of summary judgment for Fox Lake medical personnel, including health-services manager Candice Whitman, nurse Julie Ludwig, and Dr. Charles Larson, who approved his hydrocodone prescription for four times a day at medical pass only, rather than every six hours, as ordered by the surgeon. Tackett argues that each of these persons knew of, and were responsible for, depriving him of his prescribed medication and his resulting pain and suffering.

Tackett's arguments are unavailing, however. He failed to bear his burden of producing evidence that Dr. Larson was deliberately indifferent in ordering his hydrocodone prescription as "QID PRN," to be distributed at the four daily medical passes upon request. Although the prescription differed from the surgeon's recommendation of every six hours (which would include the middle of the night), Dr. Larson's actions were not so "blatantly inappropriate" as to constitute indifference, *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014), for there is no evidence that the discrepancy was due to anything other than simple negligence. We generally defer to medical professionals' judgment. *Id.* And Dr. Larson's actions in this case—ordering a prescription that would still have provided hydrocodone four times a day upon request, just at different intervals—are not so far afield as to call "into question whether the doctor actually was exercising his professional judgment." *Id.* Thus, summary judgment was proper.

The entry of summary judgment for nurse Ludwig was similarly justified. Ludwig denied Tackett pain medication outside of the daily medical passes, in accordance with his entered prescription of QID PRN. To demonstrate deliberate indifference by Ludwig, Tackett must show that her decisions were so indefensible in light of a serious medical need that "no minimally competent professional would have so responded." *Id.* Tackett does not provide evidence that Ludwig's decision not to provide hydrocodone at night, nor her role in being the one to inform Tackett of the denial, meets the high standard for deliberate indifference. *See id.* ("Something more than negligence or even malpractice is required.")

With respect to Whitman, the administrator, Tackett cites no evidence that she was personally involved in the decision to withhold post-surgery pain medication at night. Instead, he emphasizes her job description, which includes overseeing treatment plans, her receipt of the paperwork from the hospital the day of his surgery, and her knowledge of his complaints through conversations with complaint-review officers. But Whitman cannot be held responsible for his deprivations if she was not personally involved in dispensing medication. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). And supervisors cannot be held vicariously liable under § 1983 for others' violations. *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018).

### E. Motions to Recruit Counsel

Finally, Tackett contends the district court abused its discretion each time it denied his motion for recruited counsel. Tackett believes the complexity of the medical issues involved and the difficulty of obtaining discovery from the Racine defendants when he was housed at Fox Lake entitled him to recruited counsel.

The district court denied four motions for attorney representation. One decision, issued during discovery, stated: "This Court does not entertain such motions until after the close of discovery." This was an abuse of discretion. In deciding a motion to recruit counsel, a court must consider whether the plaintiff has made a reasonable attempt to obtain counsel and whether, given the difficulty of the case, the plaintiff appears competent to litigate the case himself. *See Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)). The second step is an individualized inquiry that looks to the difficulty of the case relative to the plaintiff's abilities, as demonstrated by his "literacy, communication skills, educational level, and litigation experience," and, if relevant, his "intellectual capacity and psychological history." *Pruitt*, 503 F.3d at 655; *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019) ("particularized consideration" required). A general rule is not consistent with the discretionary nature of the decision. *See Eagan*, 987 F.3d at 686. Even though we have said that it will be difficult to gauge very early on whether a plaintiff is competent to litigate, a judge may not refuse to consider the *Pruitt* factors simply because discovery has not yet closed; we have denounced any "judge-made bright-line rules" in this area. *See Mapes v. Indiana*, 932 F.3d 968, 971 (7th Cir. 2019).

To obtain relief on appeal, however, Tackett must persuade us that the district court's error prejudiced him. *See Henderson v. Ghosh*, 755 F.3d 559, 564–55 (7th Cir. 2014). He has not. Although Tackett cites challenges based on his transfer to Fox Lake and the medical issues in the case, he does not adequately explain how counsel would have

changed the outcome of his case at the discovery stage, particularly as counsel could not have overcome Tackett's pre-filing failures to comply with the notice statute and exhaustion requirement. *See Mejia v. Pfister*, 988 F.3d 415, 419 (7th Cir. 2021) (upholding denials of motions to recruit counsel despite litigant's missteps during discovery).

The district court adequately considered the remaining three motions under *Pruitt*. The court observed that Tackett had named six attorneys he contacted regarding his case, but provided no other information substantiating his efforts to obtain counsel. Further, Tackett did not adequately allege that he could not litigate the case himself; although he asserted that counsel would more effectively litigate a case of this complexity, the court properly noted that Tackett had not identified any limitations that would prevent him from presenting his case. *See Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (the district court need only reasonably apply the correct legal standard). As the court explained, the fact that an attorney would litigate more effectively than a pro se litigant is not, in itself, sufficient to compel recruitment of counsel. *See Henderson*, 755 F.3d at 564 (noting that the supply of recruitable counsel is too low to meet demand). The court thus did not abuse its discretion in denying Tackett's motions on these grounds.

AFFIRMED