NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 4, 2022*
Decided April 5, 2022

**Before**

WILLIAM J. BAUER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-1419

| | |
|---|---|
| MAFAYETTE FIELDS, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 20-cv-1211-pp |
| ANDREW MILLER, et al., *Defendants-Appellees.* | Pamela Pepper, *Chief Judge.* |

**O R D E R**

Mafayette Fields, a Wisconsin inmate, missed one dose of his prescribed medication because he reported late for the medication line. He sued various administrators and the guard who refused to dispense the medication, alleging under 42 U.S.C. § 1983 that they violated his rights under the Eighth Amendment and the

---

* The appellees were not served with process and are not participating in this appeal. We have agreed to decide the case without oral argument because the appellant's brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Equal Protection Clause. The district court dismissed his complaint at screening. Because Fields did not state a claim of deliberate indifference, and amending the complaint would be futile, we affirm.

At the pleading stage, we take Fields's factual allegations as true. *See Schillinger v. Kiley*, 954 F.3d 990, 993–94 (7th Cir. 2020). Fields has a neurological condition that causes painful muscle spasms. To control them, a prison doctor prescribed medicine for Fields to take three times per day. At Oshkosh Correctional Institution, where Fields was imprisoned at the relevant time, "medication pass," during which correctional officers dispense medicine in the prisoners' housing units, occurs at set times each day.

A few months before the incident at issue in this case, the warden circulated a clarification to the prison's medication policy: inmates needed to report for their medications on time, or they would not receive them. According to the announcement, this strict enforcement was a necessary part of the prison's transition to electronic medical records. (Fields attached the announcement to his complaint, which means we can consider it. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).) But staff routinely made exceptions to the policy for inmates who had another obligation during the regular medication call—such as school or a job assignment. Fields, who took educational courses, had regularly received his medicine when he missed medication pass due to school.

One day in May 2019, Fields returned from school and asked Andrew Miller, a prison guard, for his medication. Miller said he would need to check if he could give Fields his pills, because the midday medication pass was over. Miller called the health services unit, and someone there instructed him not to dispense the medication to Fields. As a result, Fields did not receive his medication until his next scheduled dose that evening. In the meantime, he experienced increased spasms and pain.

Fields sued Miller for acting with deliberate indifference to his medical needs by depriving him of his medication despite a doctor's order that he receive it three times per day. He further alleged that several administrators—the warden, members of a statewide policy committee, and managers of the prison's health services unit—created or implemented an unlawful medication-time policy that caused him to miss a dose. He also asserted that the defendants (who, other than Miller, is not clear) violated his rights under the Equal Protection Clause by treating him differently than other inmates who were allowed to take their medication after hours.

The district court screened the complaint under 28 U.S.C. § 1915A and dismissed it for failure to state a claim. The court reasoned that missing one dose of medication, without more, did not support an inference of any defendant's deliberate indifference. As for the equal-protection claim, the court concluded that Fields did not allege that anyone held back his medicine because of his membership in a protected class. The court dismissed the complaint without leave to amend and entered judgment.

On appeal, Fields contends that the district court failed to appreciate that non-medical staff effectively overruled his doctor's orders and therefore deprived him of adequate medical care. But we agree with the district court that Fields did not state a claim for relief.

First, to state a deliberate-indifference claim against Miller, Fields needed to allege that Miller was aware of and deliberately ignored a substantial risk of harm that Fields faced if he did not get his medication. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Fields argues that he met this standard by alleging that Miller intentionally withheld medicine that a doctor had determined that Fields needed. But nonmedical staff may rely on the judgment of medical personnel. *Rasho v. Elyea*, 856 F.3d 469, 478–79 (7th Cir. 2017). Here, Fields pleaded that Miller consulted a health services staff member, who told Miller not to give the medication to Fields. A plaintiff can "plead himself out of court" by alleging facts that show he has no legal claim, *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016), and that is what Fields did with respect to Miller.

As to the defendants who allegedly created and implemented the policy requiring medicine to be dispensed only within set hours, Fields again does not state a claim. Although government officials can be personally liable for a policy they implement, the policy must first cause a constitutional injury. *Daniel v. Cook Cnty.*, 833 F.3d 728, 737 (7th Cir. 2016). Fields argues that the policy injured him by causing him to miss a dose and that it is unconstitutional because it allows nonmedical staff to deviate from a doctor's orders. But Fields did not state a deliberate-indifference claim against Miller and does not sue anyone else who was personally involved in his missed dose, so he lacks a constitutional injury as a basis for the administrators' liability. Moreover, Fields's complaint focuses on Miller's failure to deviate from the policy for him, not anything inherently unlawful about a policy that requires medication to be dispensed only during certain hours.

Fields also argues that he stated a claim based on the prison's failure to properly train nonmedical staff on how to issue prescription medications, but that claim fails for a similar reason. To state such a claim, he would have needed to allege facts suggestive

of "[a] pattern of similar constitutional violations by untrained" prison staff. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). But again, he does the opposite. He pleads this missed dose was a one-off event—both for him and the general prison population.

Finally, Fields argues that the defendants violated his rights under the Equal Protection Clause by treating him differently from other prisoners who receive their medications outside the appointed hours. The district court concluded that Fields failed to plead that he was a member of a protected class, but that is not fatal to the extent that Fields attempted to plead a class-of-one claim. Under this theory, he had to allege facts that suggest he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Even at the pleading stage, a plaintiff's allegations must "eliminate any reasonably conceivable state of facts" that would show a logical connection between the different treatment and a legitimate government interest. *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685–86 (7th Cir. 2013).

Fields's complaint supplies a rational basis for his missed medication. The prison required strict compliance with medication-pass hours to improve its medical recordkeeping. Being able to track inmates' medication intake is rationally related to the prison's legitimate interest in providing adequate healthcare. Further, allowing exceptions (assuming any were allowed even after the policy clarification) supports the same interest. The health services staff could rationally conclude that certain prisoners had a time-sensitive need for medicine. Furthermore, Fields's complaint shows that, shortly before his missed dose, the prison renewed its focus on dispensing medication within the set hours, which is consistent with a benign explanation for Fields's allegations that exceptions were routinely granted in the past.

Finally, we remind the district court that our precedent calls for giving all litigants at least one chance to amend a complaint before dismissing with prejudice and entering final judgment. *See, e.g.*, *Zimmerman v. Bornick*, 25 F.4th 491, 492 (7th Cir. 2022); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015); *see also Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) ("[T]he PLRA's screening requirement does not—either explicitly or implicitly—justify deviation from the usual procedural practice … ."). Although that chance is not required when "it is *certain*" that amendment would be futile, *Runnion*, 786 F.3d at 519–20, the district court did not express that rationale for entering a final judgment. Nevertheless, our review is de novo, *Schillinger*, 954 F.3d at 994, and the defects we identified in the complaint are

not remediable by amending the allegations. Thus, we conclude that it would be futile to allow Fields another shot to plead his claims.

AFFIRMED