In the

# United States Court of Appeals

### For the Seventh Circuit

No. 19-2720

MICHAEL MEJIA,

*Plaintiff-Appellant,*

*v.*

RANDY PFISTER, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:15-cv-1498 — **James E. Shadid**, *Judge.*

ARGUED DECEMBER 11, 2020 — DECIDED FEBRUARY 19, 2021

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Illinois inmate Michael Mejia sued
correctional officials in federal court challenging his filthy cell
conditions and constant hallway lighting that prevented him
from sleeping. His primary claim survived dismissal and later
summary judgment and proceeded to trial, with the jury re-
turning a defense verdict. Six times along the way Mejia asked
the district court to appoint counsel, and each time the court
denied the request. Applying the standards we articulated in

*Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc), the district court observed that Mejia, who had experience with the litigation process from prior cases, demonstrated through his many filings that he understood his burden of proof and was fully capable of assembling evidence and marshaling arguments to support his contention that the conditions of confinement within the Pontiac Correctional Center violated the Eighth Amendment. Seeing no abuse of discretion in the district court's rulings, we affirm.

**I**

A

Mejia alleged that his living conditions in Pontiac were horrific throughout 2015. He described living in multiple cells—each infested with insects and covered with blood, feces, hair, and dirt—and correctional officers declining his requests for cleaning supplies, telling him to make do with the two ounces of liquid soap he received each week. These unsanitary conditions, Meija continued, caused him to develop red bumps all over his body. And he further contended that Pontiac's hallway lighting was so bright that it left him sleep deprived and in time caused depression and memory loss. Meija made plain in his amended complaint that his regular protests to Pontiac officials, including to defendants Warden Randy Pfister, Assistant Warden Guy Pierce, and Correctional Officer Todd Punke, went ignored. So Mejia turned to federal court for relief.

Mejia filed his initial complaint in December 2015, invoking 42 U.S.C. § 1983 and alleging that the defendants were deliberately indifferent toward the conditions of his confinement in violation of the Eighth Amendment. Accompanying

the complaint was a motion for the recruitment of counsel. The court dismissed Mejia's complaint without prejudice during the screening process required by 28 U.S.C. § 1915A and denied the accompanying request for counsel as moot. Mejia filed an amended complaint, and this time his Eighth Amendment claim survived § 1915A review.

Mejia submitted his second request for counsel on January 3, 2018, more than a year after the close of discovery, two months after the district court denied the defendants' motion for summary judgment, and a few weeks before a final settlement conference. The district court again denied the motion. Applying the framework from our 2007 *en banc* decision in *Pruitt*, the district court underscored that Mejia, following the dismissal of his original complaint, "was able to successfully amend his complaint, obtain needed discovery, and survive summary judgment with two claims." From there the district court observed that the "surviving claims are not complex" and that Mejia, while not having previously represented himself during any trial, did have "extensive litigation experience." Even more, the district court underscored, Mejia "has demonstrated he is capable of describing his living conditions and his complaints about those conditions." The district court further added that Mejia would not find himself unable to present witness testimony at trial, as his inmate witnesses would be able to testify by video.

In the ensuing seven months leading to the August 2018 trial, Mejia renewed his request for counsel four more times. Relying on many of the reasons supporting the earlier denial of Mejia's second motion, the district court denied each additional request. At the final pretrial conference, and as part of denying Mejia's fifth request for counsel, the district court

supplemented its prior reasoning by observing that Mejia—throughout the litigation—"repeatedly demonstrated that he is capable of describing both his living conditions and his efforts to alert Defendants," while also "demonstrat[ing] his understanding of his claims, the issues, and the evidence during the pretrial hearing."

On appeal Mejia challenges at least four of the district court's denials of his requests for counsel.

## II

When reviewing the denial of a prisoner's motion to recruit counsel under 28 U.S.C. § 1915(e)(1) we ask whether "the indigent plaintiff made a reasonable attempt to obtain counsel or [has] been effectively precluded from doing so," and, if so, whether "given the difficulty of the case, . . . the plaintiff appear[s] competent to litigate it himself." *Pruitt*, 503 F.3d at 654. All agree Mejia satisfied the first prong by trying on his own to retain counsel. *Pruitt*'s second prong considers "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id.* at 655. Our review of a denial of a motion to appoint counsel proceeds under the deferential abuse of discretion standard. *Id.* at 658 (citing *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005)).

We see no abuse of discretion in any of the rulings Mejia now challenges. With Mejia not contesting the district court's denial of his first request to appoint counsel, we turn to the denial of the second motion. The district court began by invoking the *Pruitt* framework and observing that Mejia had demonstrated not only his understanding of the factual and

legal issues in his case, but also an ability to convey his positions with clarity.

The district court then proceeded to the second half of the *Pruitt* analysis and examined the complexity of Mejia's claims, finding that they fell on the straightforward end of the spectrum. To prevail Mejia needed to establish the unsanitary conditions in his cells, constant hallway lighting that caused sleep deprivation and related mental harms, and the defendants' awareness of and inaction in response to either or both of these alleged conditions. See *McCaa v. Hamilton*, 959 F.3d 842, 846 (7th Cir. 2020).

The district court summarily incorporated and relied on the reasoning from its denial of Mejia's second motion in denying the third, fourth, fifth, and sixth requests for counsel. At the final pretrial conference, and as part of denying Mejia's fifth motion, the district court added to its prior analysis that Mejia had "demonstrated his understanding of his claims, the issues, and the evidence during the pretrial hearing."

The district court's rulings adhered to the *Pruitt* framework and reflected a reasonable exercise of discretion. The district judge had before him a *pro se* inmate who had showed himself at every phase of the litigation to be capable of comprehending and navigating the litigation process, including by avoiding dismissal of his amended complaint, adequately utilizing the discovery process to obtain information from his adversaries, successfully opposing the defendants' motion for summary judgment, and ultimately getting his case to trial. In denying Mejia's requests for counsel, the district court tapped its unique vantage point—its close proximity to all aspects of the pretrial proceedings—by drawing upon its firsthand impressions of Mejia's ability to adequately understand and

prosecute his claims at each step along the road to trial. This iterative yet individualized approach to ruling on each of Mejia's motions aligns with our prescriptions in *Pruitt* and reflects no abuse of discretion by the district court at any step.

In no way do we question that Mejia encountered challenges representing himself. Take, for example, what transpired during discovery. Mejia failed to comply with the district court's scheduling order and submitted only one discovery request, which itself was untimely. But the district court took steps to remedy this failing by granting Mejia's subsequent request (made orally during a status conference) and ordering the defendants to produce any policy documents addressing cell sanitation and cleaning. At another point the district court ordered the defendants to produce any reports concerning the cleanliness or sanitation of each of Mejia's cells.

On another front, Mejia faced the often challenging task of marshaling evidence to prove the defendants acted with a culpable state of mind. But in the circumstances presented here, he showed himself capable of doing so, as he plainly demonstrated through his filings and performance at the pretrial conference that he understood and could present evidence on this element of his claim. And we see nothing in the record showing that his subsequent transfers to different prisons prevented him from gathering the necessary proof. In the end, Mejia needed to show that the defendants knew about the conditions of his confinement and failed to act. See *McCaa*, 959 F.3d at 846. The district court committed no error in finding that Mejia was capable of shouldering this burden.

Mejia also disagrees with how the district court evaluated his ability to represent himself at trial. But such disagreement, absent a "methodological lapse," does not amount to an abuse

of discretion. *Santiago v. Walls*, 599 F.3d 749, 765 (7th Cir. 2010). No such lapse occurred here. The district court correctly observed that Mejia had an extensive litigation history, including with at least one prior case going to trial, albeit with appointed counsel. Mejia had difficulty with the discovery process, but it was well within the judge's discretion to decide to overlook his slips and help him rather than try to recruit counsel. And while Mejia observes that he had never conducted a trial on his own before, that is true for the vast majority of *pro se* litigants. The district court grounded its decision to deny Mejia's request to recruit trial counsel on its observation (during the pretrial conference) of his ability to comprehend and address the facts and issues pertinent to his Eighth Amendment claim. The court's reliance on these factors shows no abuse of discretion.

Nor does the fact that some trial witnesses testified by videoconference change the analysis. To be sure, we have held that the added complexities of conducting a trial by videoconference may in some instances exceed an inmate's capacity. See *Walker v. Price*, 900 F.3d 933 (7th Cir. 2018). But the routine use of videoconference technology to have two inmate witnesses testify does not compare to the difficulties of conducting a full trial remotely—the situation in *Walker*. The district court did not abuse its discretion in denying Mejia's motions despite this additional technical component of the trial.

This conclusion eliminates the need to examine fully the prejudice prong of the *Pruitt* analysis. We note only that the standard for prejudice requires more than just a likelihood that recruited counsel would have performed better than the *pro se* litigant, a benchmark that would nearly always be met. See *Jackson v. Kotter*, 541 F.3d 688, 701 (7th Cir. 2008)

("[S]peculating about how counsel might have done a better job prosecuting the case is neither necessary nor appropriate." (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1008 (7th Cir. 2006))). Instead, to show prejudice Mejia must demonstrate "there is a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Pruitt*, 503 F.3d at 659. Our review of the record—especially the paucity of evidence supporting Mejia's allegations of deliberate indifference to his conditions of confinement—leaves us confident that he has not carried his burden here.

### III

Michael Mejia encountered litigation challenges all too often faced by *pro se* inmates and understandably asked the district court a few times to appoint counsel. And, for its part, the district court found itself having to make a choice about how best to allocate scarce resources, for it remains the sad reality that "there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). The district court committed no abuse of discretion in undertaking this difficult and unfortunate calculus here.

We close by thanking the Washington University School of Law Appellate Clinic for representing Mejia on appeal. In addition to the two students who ably briefed this appeal, a third law student, supervised by the Clinic's director, argued the case. The students no doubt realized the personal satisfaction and professional enrichment that comes from *pro bono* service—from using their legal talent to help someone in need. Mejia may not have received what he wished for in the district court, but he should know he was very well represented on appeal.

With these parting observations, we AFFIRM.