NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 10, 2021[*]
Decided June 14, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-1323

| | |
|---|---|
| RICHARD BILIK, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:16-CV-821-NJR |
| | |
| ROBERT SHEARING, et al., | Nancy J. Rosenstengel, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Richard Bilik, a state inmate, sued prison doctors and nurses, alleging that their treatment of his migraines, back pain, and neuropathy (nerve damage) violated the Eighth Amendment. Bilik also asked the district court to recruit counsel. The court denied his motions and entered summary judgment for the defendants. Because the

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

court did not abuse its discretion in declining to recruit counsel, and no reasonable juror could find that the defendants were deliberately indifferent to Bilik's pain, we affirm.

This suit concerns the treatment that doctors and nurses provided Bilik at Menard Correctional Center, where he was incarcerated in Illinois from 2013 through 2016. Before his transfer to Menard, Bilik suffered from and received treatment in prison for headaches. He saw a specialist in 2012 who administered an MRI and diagnosed him with chronic migraines. When Bilik came to Menard, Robert Shearing, the prison's medical director, talked by phone to a nurse conducting Bilik's intake evaluation. Dr. Shearing learned that other doctors had prescribed physical therapy and pain-relieving opioids to treat Bilik's migraines, as well as back pain and tingling and pain in his arms and legs caused by nerve damage. Dr. Shearing ordered the nurse to discontinue that treatment until a doctor could evaluate Bilik in person.

Dr. Shearing later examined Bilik in person three times and declined to refill his past prescriptions for the opioids. Bilik complained to the doctor that he still had daily migraines and pain in his back, arms, and legs, and so he wanted Dr. Shearing to renew those prescriptions. Dr. Shearing, however, believed Bilik was exaggerating symptoms and exhibiting "drug-seeking behavior" because his physical exam and x-ray results were normal and inconsistent with his complaints. Dr. Shearing prescribed a weaker, non-opioid pain reliever (naproxen) and told Bilik that his overuse of strong drugs was likely causing his headaches. Two months later, when Bilik complained that his back pain persisted, Dr. Shearing switched his prescription to another non-opioid pain medication (meloxicam). The following month, Bilik reported back pain again and asked for an opioid. Dr. Shearing denied that request, observing that Bilik's exam results were still normal.

Bilik was later evaluated by two more doctors. First, John Trost, Menard's next medical director, saw him six times. Whenever Bilik complained about back pain, Dr. Trost increased the dosage for or changed the pain relievers. Dr. Trost did not initially prescribe an opioid, prescribing instead four different, non-opioid pain relievers. But eventually, after those failed to resolve the pain, he authorized one of the previous prescribed opioids. Second, Dr. Stephen Ritz conferred with Dr. Trost to see if outside services, like an MRI or physical therapy, could identify the cause of or alleviate Bilik's symptoms. They concluded that neither was medically necessary because Bilik's physical exam and x-ray results were still normal and inconsistent with his complaints.

A fourth doctor, Fe Fuentes, also examined Bilik. She evaluated Bilik once, when he complained that he was suffering from knee and back pain. She prescribed naproxen and meloxicam, and she submitted an order which, for a year, excused Bilik from working and permitted him to reside in low bunks and galleries. Dr. Fuentes did not prescribe an opioid or physical therapy because Bilik's exam results were normal and those prescriptions, she concluded, would not have alleviated his reported symptoms.

Two nurse practitioners also evaluated Bilik. The first conducted Bilik's intake evaluation in 2013, and he adhered to Dr. Shearing's instructions to discontinue the opioids. Four months later, when Bilik visited this nurse practitioner for back and arm pain, he referred Bilik to Dr. Shearing. The following year, Bilik complained to this nurse that he was suffering from back pain and neuropathy and asked for stronger drugs. (At the time, he was taking naproxen ordered by Dr. Trost.) The nurse practitioner offered ibuprofen, but Bilik opted to continue taking naproxen. The second nurse practitioner examined Bilik when he complained that meloxicam upset his stomach. This nurse discontinued that prescription. At another visit, Bilik asked her to renew his order to reside in a low gallery, but she said that he no longer qualified. Soon after, Bilik was transferred to Pinckneyville Correctional Center.

Bilik next turned to the federal court. He sued his four doctors and two nurses at Menard under 42 U.S.C. § 1983, alleging that they deliberately ignored his medical needs. U.S. CONST. amend. VIII. (Bilik sued prison administrators as well, but he does not challenge the entry of summary judgment in their favor, so we will not discuss them further.) Bilik also filed five motions to recruit or to reconsider recruiting counsel, all of which the district court denied. After Bilik responded to the defendants' motion for summary judgment, he asked the court to accept two declarations by Pinckneyville doctors, filed in an unrelated lawsuit, about their treatment of a cyst. The district court denied Bilik's motions and entered summary judgment for the defendants.

Bilik challenges the entry of summary judgment, arguing that the district court overlooked evidence that the opioids, physical therapy, and outside treatment were necessary to treat his pain. We review summary judgment de novo. *See Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (en banc). To defeat summary judgment, Bilik needed to furnish evidence that the defendants knew of and disregarded his serious medical conditions. *See id.* at 728. But as we are about to explain, he failed to meet his burden of showing that "no minimally competent professional" would have refused to prescribe the treatment he sought. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

First, no reasonable juror could find that Dr. Shearing deliberately ignored Bilik's medical conditions. We recognize that prior doctors had prescribed opioids and physical therapy for his migraines and neuropathy. But a disagreement among doctors, alone, is insufficient to establish deliberate indifference when it is based on reasonable medical judgment. *See Pyles*, 771 F.3d at 409. Dr. Shearing discontinued opioids and physical therapy for two medically supported reasons: Bilik's overuse of opioids may have worsened his headaches, and Bilik's exam results did not match his complaints, which suggested that he was now lying about his symptoms. Bilik responds that a specialist had diagnosed him with migraines in 2012. A refusal to follow a specialist's order can reflect deliberate indifference. *See Petties*, 836 F.3d at 729. But Bilik did not proffer evidence that this doctor had ordered opioids or physical therapy for migraines. Moreover, Dr. Shearing did not withhold treatment; he merely prescribed less-addictive medicine. At bottom, Bilik wanted stronger drugs, but we reject claims "based on a preference for one medication over another unless there is evidence of a *substantial* departure from acceptable professional judgment." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (emphasis in original). The record here shows no such departure.

Dr. Trost's and Dr. Ritz's treatment decisions were likewise rooted in sound medical judgment. Dr. Trost adjusted Bilik's prescription each time that he complained of persisting pain and reasonably declined to prescribe an opioid as a first resort (though he prescribed one eventually) because it can be abused. When Bilik insisted that drugs did not alleviate his pain, these doctors attended to his needs by considering services outside of the prison. But they reasonably determined the services were not medically necessary because Bilik's exam and x-ray results remained normal. Because nothing suggests that these medical decisions were "blatantly inappropriate," Bilik's claim of deliberate indifference against them rightly failed at summary judgment. *See Pyles*, 771 F.3d at 412.

Summary judgment for the remaining defendants was similarly justified. Responding reasonably to Bilik's needs, Dr. Fuentes prescribed non-opioid pain relievers and ordered living and working accommodations for him. Given his normal exam results, her judgment that stronger drugs and physical therapy were not medically necessary did not offend the Eighth Amendment. Likewise, Bilik has not shown that the first nurse (at intake) ignored an obvious medical risk because he permissibly followed Dr. Shearing's orders to discontinue opioids and offered ibuprofen for pain relief instead of opioids, given their potential for abuse. *See Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1075–76 (7th Cir. 2012). The claim against the second nurse also fails because Bilik furnished no evidence that he required a low-gallery

permit to avert a severe risk of serious injury or that the nurse recklessly discontinued his meloxicam prescription after he had complained that it bothered his stomach.

Bilik next argues unpersuasively that the district court abused its discretion each time it denied his motions to recruit counsel. When presented with a motion to recruit counsel, a district court must consider whether the litigant made reasonable attempts to find a lawyer and whether, given the difficulty of his case, he appears competent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Here, the district court applied the *Pruitt* factors to each of Bilik's motions. It reasonably observed that Bilik's filings were easy to understand, *see Mejia v. Pfister*, 988 F.3d 415, 419 (7th Cir. 2021), and properly considered each motion relative to the complexity of the phase of the case, *see Walker v. Price*, 900 F.3d 933, 938–39 (7th Cir. 2018). Also, the court noted that, despite the limited medical records that Bilik had obtained, he had participated in discovery and faced no discovery disputes with the defendants. The record thus supports the reasonableness of the district court's rulings.

Last, Bilik argues for the first time in his reply brief that the district court abused its discretion in refusing to admit the new evidence that he proffered after responding to the defendants' motion for summary judgment. Because he raised this argument only in reply, it is waived. *See Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). In any event, the evidence would not have helped Bilik survive summary judgment. The declarations attested to the Pinckneyville doctors' treatment of a cyst, which was not relevant in this lawsuit, and they did not suggest that the defendants' treatment of Bilik's migraines, neuropathy, or pain violated the Eighth Amendment.

We have considered Bilik's remaining arguments, and none merits discussion.

AFFIRMED