In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-2946

LAZEREK AUSTIN,

*Plaintiff-Appellant*,

*v.*

CHERYL HANSEN, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:20-cv-01399-JES — **James E. Shadid,** *Judge*.

_____

SUBMITTED AUGUST 14, 2024[*] — DECIDED JUNE 6, 2025

_____

Before EASTERBROOK, HAMILTON, and BRENNAN, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Lazerek Austin, a state prisoner and pro se litigant, sued three medical providers

_____

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed R. App. P. 34(a)(2)(C).

under 42 U.S.C. § 1983 alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Litigation proceeded for nearly three years and ended when the district court entered summary judgment for the defendants. We address in this opinion a problem we have not addressed before in a precedential opinion: Austin's contention that the district court abused its discretion when it stopped searching for recruited counsel on his behalf and required him to continue litigating pro se. We address Austin's other appellate arguments in a non-precedential order also issued today.

Federal courts lack the power to compel an attorney to provide free services to a civil litigant. *Mallard v. United States Dist. Ct.*, 490 U.S. 296, 310 (1989) (holding predecessor version of 28 U.S.C. § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel"). Indeed, this is why we try to take care to speak of "recruitment" and not "appointment" in this context. We have often noted the difficulty district courts may encounter in trying to recruit pro bono counsel for civil litigants who are indigent. See, e.g., *Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (holding that courts may consider "the perceived merits of—or likelihood of success on—an indigent plaintiff's claims" when allocating scarce resource of volunteer attorneys).

There are more of these litigants than available volunteer lawyers throughout much of the circuit. Thus, even when the court believes that a litigant meets the criteria for recruited counsel—as the judge here initially thought Austin did—the court may not be able to find one despite reasonable efforts. *Wilborn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018) ("[I]dentifying a volunteer is not always possible, especially for cases

outside of major metropolitan areas."). The district court in this case made reasonable—and commendable—efforts to find a volunteer to represent Austin but was unsuccessful. In our view, the district court was not required to search for a volunteer lawyer indefinitely. That would be a sufficient basis for rejecting Austin's argument here. The district court also went further, took a fresh look at Austin's ability to litigate his case without counsel, and reasonably concluded that Austin was capable of litigating his claim without counsel. That is an additional reason to affirm.

In the fall of 2020, Austin filed this § 1983 lawsuit. Shortly after his complaint survived screening under 28 U.S.C. § 1915A, Austin moved for recruited counsel. In his motion, he said that he had contacted several attorneys but could not secure representation. He asserted that he could not litigate the case himself because he is severely mentally ill, could not understand medical documents, and was in an administrative segregation wing of a new prison without access to legal assistance and with diminished access to law library services. The court granted Austin's motion for recruited counsel but advised Austin that it could only request a volunteer.

Discovery continued, and after several months, the court entered an order explaining that its efforts to recruit counsel for Austin had been unsuccessful. The court's clerk had contacted a list of attorneys who had previously expressed a willingness to take pro bono cases and sent an email to more than 1,000 attorneys in the Seventh Circuit Bar Association, but no one agreed to represent Austin. The court emphasized that the need for lawyers far exceeds the number of available attorneys, especially in the Central District of Illinois, and it determined that continued efforts to recruit counsel would be

futile. Regardless, the court continued, Austin was competent to represent himself. He had by then shown that he could "actively and aggressively" litigate his case by participating in discovery and responding to motions with clear facts and case law to support his arguments.

Austin continued to represent himself, filing discovery motions and responding to the defendants' summary-judgment motions. Eventually, the district court entered summary judgment for the defendants, concluding that a reasonable jury could not find that they violated Austin's constitutional rights.

Austin appealed. Still representing himself, he argues that the district court erred by not recruiting counsel for him after initially granting his motion. We review the handling of the motion for an abuse of discretion and ask whether the district court "applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc). Even when the district court concludes that it should recruit a lawyer, however, one may not be available or willing to take on the case. We have said that the district court's application of the *Pruitt* standard "should be informed by the realities of recruiting counsel in the district." *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020). Those realities differ widely among districts. And taking a case through trial-level litigation to judgment ordinarily requires far more time and resources than handling an appeal, which further shrinks the supply of lawyers who can absorb the costs in time and money. See *id.*

Nevertheless, Austin contends that the district court here did not do enough to find him a lawyer. We disagree. The court's initial ruling did not create a right to a lawyer; such a

right simply does not exist in federal civil litigation. *Pruitt*, 503 F.3d at 656. Nor did it create an obligation for the court to search indefinitely for one. *Wilborn*, 881 F.3d at 1008. The record reflects reasonable efforts by the court to find pro bono counsel. When those efforts were not successful, the court reasonably decided that continued efforts were futile because of the scarcity of available attorneys. See *id.* By considering the high demand for pro bono resources specific to the Central District of Illinois (500 pro se prisoner cases filed each year with nearly all plaintiffs requesting recruited counsel), Judge Shadid's ruling embraced the practical approach we emphasized in *Pruitt*. See also *Watts*, 42 F.4th at 763–64 (emphasizing practical problems and district court discretion in this area); *McCaa*, 959 F.3d at 845 (same). The district court did not abuse its discretion in declining to make further efforts.[1]

Further, when he could not find volunteer counsel despite his efforts, the judge notified Austin and then engaged in the analysis required by *Pruitt* before deciding that Austin could proceed pro se. When considering a motion to recruit counsel, a district court must consider first whether the indigent plaintiff made a reasonable attempt to obtain counsel and, second, whether the plaintiff is capable of litigating his case, given its difficulty. *Pruitt*, 503 F.3d at 654–55. Here, the court appropriately verified that Austin had tried to find counsel himself and

---

[1] Our decision in this precedential opinion tracks our non-precedential decision in *Roberts v. Neal*, 713 Fed. App'x 509 (7th Cir. 2018), where the district court had contacted more than 100 lawyers but found no one willing to represent the plaintiff. We held that the district court had not abused its discretion by deciding the case based on the plaintiff's pro se efforts, saying "At some point a court must be entitled to stop beating the bushes for counsel." *Id.* at 510.

then reasonably concluded that the difficulty of his case did not exceed his capabilities. Though prison medical-care claims can be complex, the court explained that Austin had competently litigated his case so far. He had "clearly set forth the factual basis" of his constitutional claim in his complaint, participated in discovery and filed successful motions, and "unlike many pro se litigants," supported his summary-judgment response with specific facts and relevant case law. Furthermore, Austin had demonstrated his ability to describe his symptoms and requests for treatment and the defendants' responses. To assist Austin with continuing to litigate himself, the court also offered additional time for discovery. See *Giles v. Godinez*, 914 F.3d 1040, 1053 (7th Cir. 2019) (advising district courts to take this approach). Thus, the court did not abuse its discretion when it determined that—based on Austin's performance litigating his claim—he was competent to continue without recruited counsel. See *Ealy v. Watson*, 109 F.4th 958, 967–68 (7th Cir. 2024).

We will assume that the district court's analysis under *Pruitt* may have been influenced by the inability to recruit counsel, but that is part of the practical approach we have endorsed. Austin understandably argues that pro bono counsel would have helped him conduct additional discovery and better convey his injury at summary judgment. The question in both the district court and on appeal, however, is not whether an attorney would have presented the case better. *Pruitt*, at 503 F.3d at 655. Unfortunately, Austin faced litigation hurdles that many pro se plaintiffs face. See *Mejia v. Pfister*, 988 F.3d 415, 419–20 (7th Cir. 2021). Judge Shadid undertook the "difficult and unfortunate calculus" of allocating limited legal resources. *Id.* at 420; see also *McCaa*, 959 F.3d at 847 (acknowledging "difficult mix of factors weighing for and

against recruiting counsel"). Because he conducted an "individualized and practical inquiry" into Austin's ability to litigate his case, *Ealy*, 109 F.4th at 967–68, he did not abuse his discretion.

AFFIRMED.